

FILED

1   Walter J. Lipsman, Esq. (SBN 77212)
    wlipsman@mpplaw.com
2   Christopher G. Foster, Esq. (SBN 119142)       13 JAN 10 PM 3: 11
    cfoster@mpplaw.com
3   **MORRIS POLICH & PURDY LLP**                  CLERK U.S. DISTRICT COURT
    1055 West Seventh Street, 24th Floor           CENTRAL DIST. OF CALIF.
4   Los Angeles, California 90017                       LOS ANGELES
    Phone: (213) 891-9100 / Fax: (213) 488-1178    BY:_____
5
    Attorneys for Defendant
6   CARGOTEC SOLUTIONS, LLC

7   Joshua A. Quinones, Esq. (SBN 186003)
    jquinones@wshblaw.com
8   Lori L. Viera, Esq. (SBN 210623)
    lvieira@wshblaw.com
9   WOOD, SMITH, HENNING & BERMAN LLP
    505 North Brand Boulevard, Suite 1100
10  Glendale, California 91203
    Phone: (818) 551-6000 / Fax: (818) 551-6050
11
    Attorneys for Defendant
12  CAPACITY OF TEXAS, INC.

13  Robert A. Shields, Esq. (SBN 206042)
    rshields@wilsonturnerkosmo.com
14  Sotera L. Anderson (SBN 211025)
    sanderson@wilsonturnerkosmo.com
15  WILSON TURNER KOSMO LLP
    550 West C Street, Suite 1050
16  San Diego, CA 92101
    Phone: (619) 236-9600 / Fax: (619) 236-9669
17
    Attorneys for Defendants
18  CUMMINS INC. and CUMMINS DIESEL
    SALES CORPORATION
19                                  **CV13-00192** JAK (MRWx)

20              **UNITED STATES DISTRICT COURT**

21              **CENTRAL DISTRICT OF CALIFORNIA**

22  CARLOS B. TREVINO, DONNA          | Case No.  BC 462323
    TREVINO, ALEX MARINKOVICH,        |
23  JENNIFER SHARP, STEVEN SHARP,     | Removed from Los Angeles Superior
    JOEL GRAVES, ROSEMARY GRAVES,     | Court, Case No. BC 462323
24  NICKOLAS VITALICH, SHARON         |
    VITALICH, GILBERT OLGUIN,         |
25  SANDRA OLGUIN, RALPH ESPOSITO,    | **DEFENDANTS' NOTICE OF**
    ANN ESPOSITO, MARILYN             | **REMOVAL**
26  WILLIAMS, STEVE ROLDAN,           |
    CHRISTY ROLDAN, LOURDES RADA,     |
27  ERIC COOPER, JOHNNIE              |
    CRUTCHFIELD, GUSSIE               |
28  CRUTCHFIELD, RAE DELGARDO,        |

                              1
            **DEFENDANTS' NOTICE OF REMOVAL**

| | |
|---|---|
| 1 | TONY HERNANDEZ, JENNIFER HERNANDEZ, WILLIAM JEGIER, |
| 2 | DANUTA JEGIER, NICK LUSIC, YVONNE MARINKOVICH, VALERIE |
| 3 | ORTIZ, MARIE PLETKOVICH, JACQUE SHELL, MICHAEL |
| 4 | VOJKOVICH, TIFFANY VOJKOVICH, JOSHUA FLORES, NOEMI FLORES, |
| 5 | RICHARD FLORES, CARMEN FLORES, FRANK AVILA, VINKO |
| 6 | CARIC, ROBERT CASTORENA, JAMES MICHAEL LOPEZ, MICHAEL |
| 7 | SEMINTILLI, MARTHA SEMINTILLI, GEORGE SETKA, MARYANN SETKA, |
| 8 | LUTHER ABRAHMS, MONESHA ABRAHMS, MARIE AGUIRRE, RAJ |
| 9 | AKHIL, GREGORIO ALBAREZ, JOSEPH ALBERT, CHARLES |
| 10 | ANTHONY ALLEN, ROSENDO ALRETE, LUZ MARIA AMEZCUA, |
| 11 | MELVIN ANDERSON, PHILIP APELDIRE, SOLOMAN B. ARMOND, |
| 12 | LEON AYERS, YVONNE BAILEY, TOM BARCOT, DALE BARNES, |
| 13 | ANITA BATES, SIUPOLU BELAUSTEGUI, KENT BENNETT, |
| 14 | SHELLY BOHANON, RUBEN BORJA, EDWARD BOUGERE, CARLA BOYD, |
| 15 | CHARLES BRIDGETTE, HAROLD BROWN, JOHNNY C. BROWN, |
| 16 | NATHANIAL BROWN, WARREN BROWN, ED BUGARIN, DANNY |
| 17 | BURGIS, JASON CAMELLO, JOE CAMELLO, DARLENE CAMPBELL, |
| 18 | EVELIA CAMPOS, FRANK CAMPOS, HECTOR CAPOTE, FELIX |
| 19 | CARDENAS, MARNIE CARMONA, PHYLLIS CARPENTER, FRANK |
| 20 | CASTANIA, JULIO CASTANEDA, JOHN CHAVEZ, PAUL CIRILLO, |
| 21 | GREG CLARK, DYVETTE KAY COLLINS, LEROY COLLINS, PASKO |
| 22 | COTICH, LYRAE COX, THERESA CROMOSINI, JOE CUBIT, JEANNE |
| 23 | CUKROV, (DECEASED) MATT DAVISON, KEVIN DESHON, EDDIE |
| 24 | DEHARO, JOHN P. DELAROSA, DAN DEL REAL, BEVERLY DELUCA, BOB |
| 25 | DICKERSON, ROBERT G. DOUGLAS, JR., JACK DRUSKOVICH, JULIUS |
| 26 | DUNN, JONATHAN FERGESON, JOANN FERGUSON, AL FERRANTE, |
| 27 | NICHOLAS FLORENTIN, ARMANDO FLORES, RAY FOSTER, MARISSA R. |
| 28 | FRESCURA. ALAN FULLENWIDER. |

2

**DEFENDANTS' NOTICE OF REMOVAL**

| | |
|---|---|
| 1 | RAMONA GALINDA, ALBERT GAMEROZ, RICARDO GAMEZ, JR., |
| 2 | CHRISTINA GARCIA, JOHN GARCIA, VICTOR GARCIA, BILLY GARDNER, |
| 3 | JANICE GARNETT, RAY GIACOMI, LACRESA GILLIUM, JOSE GO, GIVCO |
| 4 | GOJANOVIC, RONIT GOLAN, WILLIAM L. GOMILLION, RUSSELL |
| 5 | GONHUE, ARTHUR GONZALEZ, JAMES GONZALES, MARTIN |
| 6 | GONZALES, JR., PHIL GRAVES, ERNEST GREEN, CARMEN |
| 7 | GRISWOLD, JAMES W. GROOMES, CHRISTINE GUERRERA, JULIUS |
| 8 | GUEVARA, CHARLES GUZMAN, DEBORAH HANKS, LARE HAPONSKI, |
| 9 | ROBERT HARRELL, ROBIN HARMON, WILLIE HAYES, ROBERT |
| 10 | HEBERER, ANTHONY HEMMONS, KEVIN HENSON, ERNEST HERRERA, |
| 11 | JOHNNY HERRERA, CHARLENE HOWARD, TOM HOYSGAARD, |
| 12 | DEBRA HUETT, SHAWN HUNTER, KRYSTENA ISON, FRANCO IZZO, |
| 13 | REGINALD JACKSON, KINSHASA JACKSON, ALBERT JELENIC, JAMES |
| 14 | JERNIGAN, BRETT JOHNSON, JOSHUA JOHNSON, MICHAEL |
| 15 | JOHNSON, ROOSEVELT JOHNSON, ROXANNE JOHNSON, SHIRLEY |
| 16 | JOHNSON, DWAYNE JONES, STEVEN JONES, PETE JONCICH, BARBARA |
| 17 | JUAREZ, JOSEPH KIRKSEY, DEBORAH KLEIN, RAUL LARIVERA, |
| 18 | CHRISTOPHER LASPESA, JERRY LIEBMAN, RICK LIND, JAMAL LONG, |
| 19 | ALBERT LOPEZ, DIANA LOTT, TAMIKA LOVE, BOB LUCIN, |
| 20 | PATRICK LYNN, LEVI MARTINEZ, RAYMOND MARTINEZ, WINNI |
| 21 | MARTINEZ, DERRELL MATTHEWS, MARK MATTHEWS, DON MCCALL, |
| 22 | ARMIDA MENDOZA, GERRY MILLARD, DANISA MIRCOVICH, |
| 23 | BRIAN MISURACA, FLOREN MOBLEY, PAULINE MOEGA, |
| 24 | RUSSELL MOILOV, EDDIE MONCADO, JACOB MONTOYA, |
| 25 | RICARDO MONTOYA, LOREN MORGAN, KATHRYN MORRISON, |
| 26 | RUDY MUNIZ, NICOLE MUNOZ, VINCENT MUÑOZ, CARLOS |
| 27 | NARANJO, WILLIAM NAVARRO, JESSIE NAVARRO, MIGUEL |
| 28 | NAVARRO. TERESA NAVARRO. |

**DEFENDANTS' NOTICE OF REMOVAL**

1  JONATHAN NEAL, THERESA
   NELSON, CEASAR NUNEZ, SARA
2  OLSEN, RAZCO PANSLEY, HUEY
   PARKER, PHILLIP PELTIER, TERRI
3  PEREZ, TOM PETRICH, RAY PIGRAM,
   RODRICK PLEASANT, HENRY
4  PORTER, KEVIN PRATT, ANASTASIA
   PUNCHARD, ANTHONY QUEZADA,
5  MANUEL QUEZADA, RAYMOND
   QUEZADA, JULIAN QUINTERO,
6  MARIA RENDON, ROGENA RISING,
   FRED ROBINSON, RACHELLE
7  ROBINSON, LOUISE ROBINSON,
   WINFRED ROBINSON, ABIGAIL
8  RODRIGUEZ, HERBERT RODRIGUEZ,
   LAWRENCE ANDREW ROLAND,
9  REGGIE ROLAND, SR., GARY
   ROQUE, RUDY ROSAS, SR.,
10 KATHLEEN ROWLAND, SHYRAUN
   RUFFIN, JOAN E. SAMPLE, DAVID
11 SAMPOREO, GAY SANDERS,
   GREGORY SCOTT, LAREINA
12 SEDILLO, ISABEL SERRANO,
   MARGARET SHEFFIELD, WILLIAM
13 SHEFFIELD, WANDA SIGGERS,
   DIANA SILVA, DENISE SIMMONS,
14 JACQUES SIMON, BRIDGET SMITH,
   MATTHEW KEELY SMITH, DAVID
15 SMITH, LATEEFAH SMITH, ADRIAN
   SOTO, ELLENA SPEERS, RICHARD
16 STUCKEY, BOB SVORINICH, GLORIA
   SWANINGAN, MIGUEL TALAVERA,
17 DAVID THOMAS, BRANDON
   THOMAS, ROBERT THOMAS, NIKRA
18 TIMES, FRANK TRAMA, CLARENCE
   TURNER, JERRY TURNER, MARY
19 TURNER, CORY UPSHAW, MICHAEL
   URSICH, ROBERTO VALDEZ, EDDY
20 VAN GUYSE, JOAN VANSPREW,
   WILLIAM VASCONCELOS, MELVIN
21 VAUGHN, CYNTHIA VILLARREAL,
   JAEUNE WADE, JULIUS WALKER,
22 JELINE WADE, DEAN WARD, FRANK
   ROY WARTH, COLLIE
23 WASHINGTON, ROYNAL WATTS,
   ALVIN WHISENTON, GASHIA
24 WILLIAMS, RON WOODS, LINNELL
   VINCENT WOODARD, CLARENCE R.
25 WYNNE, DERRICK YOUNG, JEANNIE
   ZAKS, MARIA DEL-PILAR ZUANICH,
26 VICTOR M. ZUNIGA, MARIJO
   ZUVICH,
27
              Plaintiffs,
28

                                    4
        DEFENDANTS' NOTICE OF REMOVAL

| | |
|---|---|
| 1 | vs. |
| 2 | CUMMINS INC., CUMMINS DIESEL SALES CORPORATION; CAPACITY |
| 3 | OF TEXAS, INC.; PACIFIC CRANE MAINTENANCE SERVICES, INC.; and |
| 4 | DOES 1 through 500, inclusive, |
| 5 | Defendants. |
| 6 | PACIFIC CRANE MAINTENANCE |
| 7 | COMPANY, L.P. |
| 8 | Cross-Complainant, |
| 9 | vs. |
| 10 | CUMMINS INC., CUMMINS DIESEL SALES CORPORATION, CAPACITY |
| 11 | OF TEXAS, INC., DYNAFLEX PRODUCTS and DOES 1-20 inclusive, |
| 12 | Cross-Defendants. |
| 13 | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446, Defendants Cargotec Solutions, LLC ("Cargotec"), Capacity of Texas, Inc. ("Capacity"), and Cummins Inc. and Cummins Diesel Sales Corp. (collectively, "Cummins") (collectively, "Defendants") remove this action from the Superior Court of State of California for the County of Los Angeles–Central District to the United States District Court, Central District of California.

In support of their Notice of Removal, Defendants state as follows:

1.      On May 26, 2011, seventeen plaintiffs, including ten longshore workers and their spouses (collectively, "Plaintiffs"), filed a product liability suit against multiple manufacturer and maintenance company defendants in an action captioned *Carlos B. Trevino, et al. v. Cummins Inc., et al.*, Case No. BC 462323 (Los Angeles County Superior Court) (the "State Court Action").  Plaintiff longshore workers claimed various injuries and damages allegedly sustained by

1   being exposed to toxic emissions while driving specialized semi-tractor trailer
2   rigs—Utility Tractor Rigs ("UTRs")—in the course of their employment at the
3   Ports of Los Angeles and Long Beach.  Plaintiff spouses claimed loss of
4   consortium as a result of their spouses' alleged injuries.  (*See* Exhibit A, a
5   complete copy of all process, pleadings, and orders served on Defendants in the
6   State Court Action, including the original Complaint and the first, second, and
7   third amended complaints.)

8        2.      Plaintiffs subsequently amended their original complaint three times:
9   first to add Cargotec as a party, and twice later to add additional longshore
10  workers and spouses as plaintiffs.  Plaintiffs also voluntarily dismissed some of
11  the initially-named defendants at various points.

12       3.      Plaintiffs filed a First Amended Complaint on July 19, 2011 to add
13  Cargotec as a defendant.  (*See* Exhibit A, First Amended Complaint.)

14       4.      Plaintiffs filed a Second Amended Complaint on May 7, 2012,
15  adding 27 plaintiffs (18 longshore workers and 9 spouses) for a total of 44 persons
16  as plaintiffs. (*See* Exhibit A, Second Amended Complaint ("2nd Am. Compl.").)

17       5.      On May 1, 2012, the Superior Court had ordered that all amendments
18  to the pleadings be accomplished by November 1, 2012, and scheduled a status
19  conference for that same date.  (Exhibit A, Minute Order (May 1, 2012).)

20       6.      On October 31, 2012, Plaintiffs provided the Court with a draft of the
21  proposed Third Amended Complaint in order for it to be discussed at the
22  upcoming November 1, 2012 status conference.  (*See* Exhibit B, Declaration of
23  Christopher G. Foster ("Foster Decl."), ¶¶ 4-5, Exhibit 1, Nov. 1, 2012 Hearing
24  Transcript at 5:15-17.)

25       7.      At the status conference on November 1, 2012, the Superior Court
26  gave Plaintiffs permission to add additional plaintiffs to the case and instructed
27  plaintiffs to file their Third Amended Complaint following their submission of a
28  proposed Order granting them leave to amend.  (*See* Exhibit B., Foster Decl., ¶ 5,

Exhibit 1, Nov. 1, 2012 Hearing Transcript at 5:16-19 (By the Court: "You will need to actually file [the Third Amended Complaint]. You will probably need an order from the court in order for that to be accepted. And so the plaintiff is to prepare such an order, and the court will sign it.").)

8. Over five weeks later, on December 11, 2012, Plaintiffs filed a Third Amended Complaint adding 249 plaintiff longshore workers for a total of 293 persons as plaintiffs. (*See* Exhibit A., Third Amended Complaint ("3rd Am. Compl.").) This is the first time that the number of plaintiffs exceeded 100 under the Class Action Fairness Act of 2005.

9. Plaintiffs' counsel did not serve Defendants with the filed Third Amended Complaint until January 7, 2013.[1]

10. Plaintiffs also did not submit a proposed Order with the Third Amended Complaint filed on December 11, 2012 contrary to the Superior Court's instructions. Three weeks *after* Plaintiffs filed their Third Amended Complaint, on January 2, 2013, Plaintiffs submitted to the Superior Court a proposed Order granting them leave to file a third amended complaint. Defendants were not served with a copy of this proposed Order when it was submitted to the Superior Court.

11. The Superior Court signed the Order granting Plaintiffs leave to file a third amended complaint on January 2, 2013. Defendants were not served with a copy of the Order until January 7, 2013 when Plaintiffs also first served

---

[1] Although Plaintiffs filed the Third Amended Complaint on December 11, 2012, and although Plaintiffs served the Third Amended Complaint on January 7, 2013 (*see* Exhibit A, 3rd Am. Compl. (file stamped copy) and 3rd Am. Compl. (Jan. 7 electronically-served copy)), Plaintiffs erroneously state in the Proof of Service attached to the Third Amended Complaint that they served the Third Amended Complaint on October 31, 2012 (*Id.*, 3rd Am. Compl. (Jan. 7 electronically-served copy).)

This is incorrect. Plaintiffs provided only a copy of a draft Third Amended Complaint prior to the Superior Court's Nov. 1, 2012 Status Conference.

1   Defendants with the filed Third Amended Complaint.

2       12.   The Third Amended Complaint was not an operative pleading until it

3   was filed in the State Court Action on December 11, 2012.  Thus, Defendants

4   could not have filed this Notice of Removal until after Plaintiffs actually filed

5   their amended pleading and Defendants could properly consider the newly added

6   plaintiffs as class members.  Prior to that time, there were only 44 plaintiffs named

7   in the Second Amended Complaint.

8       13.   Although Defendants were not served with the Third Amended

9   Complaint until January 7, 2013, out of an abundance of caution[2] Defendants now

10  remove the State Court Action to this Court within 30 days after the Third

11  Amended Complaint was filed.  Therefore, this removal is timely pursuant to 28

12  U.S.C. § 1446(b)(3).

13      14.   This Court has jurisdiction over this matter pursuant to the mass

14  action provision of the Class Action Fairness Act of 2005 ("CAFA"), codified in

15  relevant part at 28 U.S.C. §§ 1332(d) and 1453.  CAFA's removal provisions

16  apply to the State Court Action because the primary defendants are not

17  governmental entities and the plaintiff class exceeds 100 persons, discussed *infra*

18  ¶ 17.  (Exhibit A, 3rd Am. Compl. ¶¶ 4-7.)  The named defendants in the Third

19  Amended Complaint are as follows:  Cargotec Solutions, LLC, Capacity of Texas,

20  Inc., Cummins Inc., Cummins Diesel Sales Corp., and Pacific Crane Maintenance

21  Services, Inc. ("Pacific Crane").[3]  (*Id.*)  Thus, none of the primary defendants is a

22

23  [2] The time for removal is triggered by formal service of the Third Amended Complaint,
24  which did not occur until January 7, 2013.  *See* 28 U.S.C. § 1446(b); *Murphy Bros. v.*
    *Michetti Pipe Stringing*, 526 U.S. 344, 354-56 (1999) (holding that a named defendant's
25  time to remove is not triggered by mere receipt of the complaint unattended by any
    formal service).  As such, the thirty-day removal deadline does not expire until February
26  6, 2013.

27  [3] Pacific Crane is not a manufacturer defendant; rather, they are a maintenance company
28  responsible for maintenance, upkeep, and repair of certain UTRs and the Ports.  (*See*
    Exhibit A, 3rd Am. Compl. ¶ 18.)

1  governmental entity. *(See id.)*

2      15.   CAFA vests federal courts with original diversity jurisdiction over

3  mass actions meeting the following four requirements: (1) a diversity requirement

4  of minimal diversity; (2) a numerosity requirement that the action involve the

5  monetary claims of 100 or more plaintiffs; (3) a commonality requirement that the

6  plaintiffs' claims are proposed to be tried jointly on the ground that the plaintiffs'

7  claims involve common questions of law or fact; and (4) an amount in controversy

8  requirement of an aggregate of $5,000,000 in claims. 28 U.S.C. § 1332(d)(2),

9  (11); *see Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007);

10  *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1047 (C.D. Cal. 2012).

11      16.   The requirements for removal under CAFA are satisfied and,

12  therefore, jurisdiction is proper in this Court.

13  ## I.    THE STATE COURT ACTION INVOLVES THE MONETARY

14  ## CLAIMS OF MORE THAN 100 PLAINTIFFS

15      17.   With the addition of 249 persons to this action on December 11,

16  2012, Plaintiffs' putative class is now made up of 293 claimants, as filed in the

17  Third Amended Complaint. *(See* Exhibit A, 3rd Am. Compl. ¶¶ 1, 2.)

18  Accordingly, the numerosity requirement of 100 or more plaintiffs was first

19

20

---

21  Plaintiffs continue to claim other "Doe Defendants" may be responsible for the product

22  or products at issue in their suit. However, plaintiffs have failed to identify or include
   additional named defendants since their Second Amended Complaint. Moreover, the

23  Third Amended Complaint makes clear that the unidentified Doe Defendants are not

24  governmental entities. (Exhibit A., 3rd Am. Compl. ¶ 9 ("The DOE Defendants are and
   at all times herein mentioned were corporations . . . .").)

25

26  Dynaflex Products ("Dynaflex") is a cross-defendant in the State Court Action as a result
   of Pacific Crane's cross-complaint against it. Plaintiffs named Dynaflex as a defendant

27  in the Second Amended Complaint; however, they subsequently voluntarily dismissed
   Dynaflex. Plaintiffs alleged no claims against and seek no relief from Dynaflex in the

28  Third Amended Complaint and, therefore, Dynaflex is not a primary defendant for
   purposes of CAFA.

**DEFENDANTS' NOTICE OF REMOVAL**

satisfied as of December 11, 2012.  *See* 28 U.S.C. § 1332(d)(5).

## II.     MINIMAL DIVERSITY EXISTS

18.     CAFA requires only minimal diversity, which is met if "any member of a class of plaintiffs is a citizen of a State different from any defendant."  *See* 28 U.S.C. §§ 1332(d)(2), (11)(A).

19.     A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

20.     The Third Amended Complaint claims and seeks damages from the following named Defendants:  Cargotec, Cummins Inc., Cummins Diesel Sales Corporation, Capacity, and Pacific Crane.  (*See* Exhibit A, 3rd Am. Compl. ¶¶ 4-7.)

21.     The Third Amended Complaint alleges Defendants Cummins Inc. and Cummins Diesel Sales Corp. are citizens of the State of Indiana, (Exhibit A, 3rd Am. Compl. ¶ 4.) and Defendant Capacity is a citizen of the State of Texas.  (*Id.* ¶ 5.)

22.     The Third Amended Complaint alleges all Plaintiffs are citizens of Los Angeles, California.  (*Id.* ¶¶ 1-2.)

23.     Because all Plaintiffs are citizens of the State of California and Cummins Inc., Cummins Diesel Sales Corp., and Capacity are citizens of Indiana and Texas, minimal diversity exists in this action.

## III.    PLAINTIFFS' CLAIMS INVOLVE COMMON QUESTIONS OF LAW AND FACT

24.     "It does not matter whether a trial covering 100 or more plaintiffs actually ensues; the statutory question is whether one has been proposed."  *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).  One complaint implicitly proposes one trial, which is what Plaintiffs have proposed here.  *See id.*

**DEFENDANTS' NOTICE OF REMOVAL**

25.     All 293 claimants have been joined into one single lawsuit in which Plaintiffs propose one trial.  All longshore worker Plaintiffs join two causes of action, strict liability and negligence products liability claims, alleging they were injured by exposure to toxic emissions while operating UTRs equipped with diesel particulate filters (DPF-equipped UTRs) and they suffered damages as a result. (Exhibit A, 3rd Am. Compl., ¶¶ 45-60.)  The Third Amended Complaint contains no individualized allegations regarding the Plaintiffs, but rather lumps all Plaintiff longshore workers together.

26.     Moreover, all Plaintiff spouses join one count alleging loss of consortium based on the Plaintiff longshore workers' injuries caused by exposure to toxic emissions while operating DPF-equipped UTRs.  (Exhibit A, 3rd Am. Compl., ¶¶ 61-68.)  Stated otherwise, the Plaintiff spouses' claim arises from the same facts as the Plaintiff longshore workers' claims.

27.     The factual and legal issues that are common to each plaintiff's claims are whether the DPF-equipped UTRs exposed Plaintiffs to toxic emissions and whether the exposure to toxic emissions caused Plaintiffs' alleged injuries. *See* 28 U.S.C. § 1332(d)(11)(B)(i).

## IV.     THERE IS AN AGGREGATE AMOUNT IN CONTROVERSY EXCEEDING $5 MILLION

28.     Although Defendants dispute liability and damages, it is evident that Plaintiffs purport to allege claims for monetary relief that, if granted, would in the aggregate exceed CAFA's $5 million threshold.  *See* 28 U.S.C. § 1332(d)(11)(B)(i).

29.     In calculating the amount in controversy, a court must assume that the allegations in the complaint are true and that a jury will return a verdict for the plaintiff on all claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  If punitive damages are recoverable as a matter of law, they are included in calculating the amount in controversy.  *See*

DEFENDANTS' NOTICE OF REMOVAL

1   *Gibson v. Chrysler Corp.*, 261 F.3d 927, 931 (9th Cir. 2001) (citing *Bell v.*

2   *Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943)).  Similarly, attorneys'

3   fees are also included in the amount in controversy if recoverable by statute or

4   contract.  *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th

5   Cir. 2007).

6          30.    When, as here, "the complaint does not specify the amount of

7   damages sought, the removing defendant must prove by a preponderance of the

8   evidence that the amount in controversy requirement has been met." *Abrego v.*

9   *The Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006).  The vagueness of a

10  plaintiff's pleadings does not preclude a court from noting that the damages are

11  potentially substantial. *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D.

12  Cal. 1995).  When discerning the amount in controversy for purposes of removal,

13  the court considers facts presented in the removal petition as well as "summary

14  judgment-type evidence." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th

15  Cir. 2004).

16         31.    Plaintiff longshore workers (approximately 277 of the 293 total

17  persons in the class), allege they were individually exposed to toxic emissions

18  while operating DPF-equipped UTRs as part of their jobs at the Ports. (*See*

19  Exhibit A., 3rd Am. Compl. ¶¶ 16, 21.)  In particular, Plaintiffs allege the DPFs

20  failed to detect and/or filter fumes, including carbon monoxide and "other harmful

21  levels of noxious substances," exposing Plaintiffs to toxic emissions. (*Id.* ¶ 28.)

22  Plaintiffs claim the DPF-equipped UTRs were allegedly manufactured, supplied,

23  and/or maintained by the Defendants. (*Id.* ¶¶ 17-19, 22-25, 29.)

24         32.    Plaintiff longshore workers claim they were each injured by exposure

25  to alleged toxic emissions. (*See* Exhibit A, 3rd Am. Compl. ¶¶ 32-41.)  Plaintiffs

26  assert they "suffered serious permanent and irreversible damage, e.g. compromise

27  to their respiratory systems and/or permanent and irreversible cognitive

28  impairment." (*Id.* ¶ 39.)

**DEFENDANTS' NOTICE OF REMOVAL**

33.    Plaintiffs further allege "each of them, were hurt and injured in health, strength and activities, sustaining injury to their respective bodies and shock and injury to their respective nervous systems and persons, including pulmonary impairment and cognitive impairment, all of which are consistent with exposure to toxic emissions . . . and all of which have caused and continue to cause each of them great mental, physical and nervous pain and suffering." (Exhibit A., 3rd Am. Compl. ¶ 42.)  They further allege that "said injuries will result in some permanent disability" and a loss of income and each "will continue to suffer a loss of income in the future."  (*Id.* ¶¶ 42, 44.)

34.    Plaintiff spouses (16 of the 293 total persons in Plaintiffs' class) also allege injuries and damages for loss of consortium due to the severe disabling injuries sustained by Plaintiff longshore workers.  (Exhibit A, 3rd Am. Compl. ¶¶ 61-68.)

35.    Plaintiffs seek the following categories of damages:  (1) general damages according to proof, with pre-judgment interest thereon; (2) compensatory damages; (3) punitive damages; (4) medical related expenses; (5) loss of income; and (6) costs of suit.  (Exhibit A., 3rd. Am. Compl. pg. 22-23.)

36.    Although Plaintiffs have vaguely pled their damages collectively and have failed to identify any specific injuries and/or dollar figures in the Third Amended Complaint, the amount in controversy requirement is met here.

37.    For example, each plaintiff in the Second Amended Complaint generally described his or her alleged injuries.  (Exhibit A., 2nd Am. Compl. ¶¶ 70-111.)  Several plaintiffs alleged very serious injuries:  Plaintiff Joshua Flores claimed his exposure resulted in lung polyps; Plaintiff Michael Semintilli claimed his exposure caused lymphoma and an enlarged heart; and Plaintiff George Setka claimed his exposure caused lung cancer and subsequent removal of a lung.  (*Id.* ¶¶ 104, 110, 111.)  The Second Amended Complaint alleged that several plaintiffs required repeated paramedic treatment and/or hospitalizations allegedly from

DEFENDANTS' NOTICE OF REMOVAL

1   exposure to toxic emission fumes from Defendants' products. (*Id.* ¶¶ 70, 73-74,
2   81, 93, 94, 102, 108.)

3          38.    Moreover, many Plaintiffs have identified severe injuries in their
4   responses to Defendants' Product Identification Questionnaire:  Plaintiff Frank
5   Campos claims severe allergies to fumes and dust at the Ports as a result of
6   exposure to toxic emissions; Plaintiff Floren Mobley claims he was diagnosed
7   with Chronic Obstructive Pulmonary Disease (COPD); Plaintiff Bob Svorinich
8   claims he fell unconscious after fumes exposure and a foreman had to "extract"
9   him from the UTR; and Plaintiff Adrian Soto claims he was hospitalized for many
10  days following exposure to emissions. (*See* Exhibit B, Foster Decl. ¶ 6, Exhibit 2,
11  Plaintiffs' Responses to Defendants Product Identification Questionnaire.)

12         39.    Although Plaintiffs have not identified any specific damages figures
13  for these alleged serious injuries, the claimed damages will be significant given
14  the severity of the alleged injuries.

15         40.    Defendants served Form Interrogatories to certain Plaintiffs.
16  Seventeen plaintiffs served responses, of which 10 were longshore workers and 7
17  were spouses.  Of the 17 responses,[4] only 9 plaintiffs included some dollar
18  amounts claimed for medical expenses and past and future lost wages. (*See*
19  Exhibit B, Foster Decl. ¶ 7, Exhibit 3, Plaintiffs' Form Interrogatory Responses.)

20         41.    The projected damages totals of only those *nine* plaintiffs who
21  identified some damage amounts in their discovery responses is approximately
22  $1.3 million.  This figure does not include all categories of damages, including
23  punitive.  More specifically, the claimed damages are as follows:

24

25  _____

26  [4] Plaintiffs stopped serving responses to Capacity's Form Interrogatories because the
27  parties agreed to phase discovery into product identification, liability, and damages
    phases.  The parties are currently in the product identification phase of discovery and
28  Plaintiffs have asserted that the Form Interrogatories request information outside the
    scope of product identification and, thus, have refused to further respond.

**DEFENDANTS' NOTICE OF REMOVAL**

- Ralph Esposito claims $4,763.78 as part of past medical expenses and unspecified future medical expenses and wage losses;
- Joel Graves claims $10,786.00 as part of past medical expenses, unspecified future medical expenses, $41,472.00 in past lost wages, and $580,608.00 in future wage loss;
- Alex Marinkovich claims $11,443.00 as part of past medical expenses, unspecified future medical expenses, $87,646.00 in past lost wages, and unspecified future wage losses;
- Gilbert Olguin claims $1,856.00 as part of medical expenses and unspecified future medical expenses and wage losses;
- Lourdes Rada claims unspecified past and future medical expenses, $6,218.00 in past lost wages, and unspecified future wage losses;
- Steve Roldan claims $7,338.75 as part of past medical expenses, unspecified future medical expenses, $35,000.00 in past lost wages, and $420,000.00 in future wage loss;
- Jennifer Sharp claims $8,910.00 as part of past medical expenses, unspecified future medical expenses, $124,280.00 in past lost wages, and unspecified future wage loss;
- Carlos Trevino claims $5,793.75 as part of past medical expenses, unspecified future medical expenses, $600.00 in past lost wages, and unspecified future wage losses; and
- Marilyn Williams claims $7,940.00 as part of past medical expenses, unspecified future medical expenses, $2,946.51 in past lost wages, and unspecified future wage losses.

(*Id.*)

42.    In their Form Interrogatory Responses Plaintiffs admit that their responses are incomplete.  As such, the damages information produced has only scratched the surface because 284 of the 293 plaintiffs have yet to provide a single

**DEFENDANTS' NOTICE OF REMOVAL**

dollar figure for their alleged injuries.  However, these amounts alone, totaling $1.3 million (excluding costs and punitive damages) demonstrate by a preponderance of the evidence that Plaintiffs purport to allege claims for monetary relief that, if granted, would in the aggregate exceed CAFA's $5 million requirement.

43.     It appears beyond dispute that the $5,000,000 requirement is met in this case.  With 293 plaintiffs, the average claim for each plaintiff would need to reach just $17,065.00.  Plaintiffs' claims for physical injury, pain and suffering, past and future medical expenses, past and future lost wages, punitive damages, and attorneys' fees surely exceed the $5,000,000 threshold.

44.     Because all requirements for removal under CAFA exist, this action should stand removed.

## V.     DEFENDANTS HAVE COMPLIED WITH THE PROCEDURAL REQUIREMENTS FOR REMOVAL

45.     Written notice of this removal is being served this date on Plaintiffs' counsel and all other defendants pursuant to 28 U.S.C. § 1446(d).

46.     Written notice of this removal is being filed this date with the clerk of the state court in which the State Court Action is currently pending pursuant to 28 U.S.C. § 1446(d).

47.     In compliance with 28 U.S.C. § 1446(a), attached in Exhibit A is "a copy of all process, pleadings, and orders served upon" Defendants in the State Court Action.

48.     Venue is also appropriate, as this District Court encompasses the county—Los Angeles County—in which the State Court Action is now pending. Thus, this Court is a proper venue for this action, pursuant to 28 U.S.C. § 84(d).

///

///

16

**DEFENDANTS' NOTICE OF REMOVAL**

1    WHEREFORE, Defendants Cargotec, Cummins, and Capacity, having met

2    all the requirements for removal, respectfully request this Court consider its

3    Notice of Removal and exercise jurisdiction over this matter.

4

5    Dated:  January 10, 2013          **MORRIS POLICH & PURDY LLP**

6

7                                      By: _____

8                                            Christopher G. Foster

9                                      Attorneys for Defendant,
                                       CARGOTEC SOLUTIONS, LLC

10

11                                     **WOOD, SMITH, HENNING & BERMAN LLP**

12

13                                     By: _____

14                                           Joshua A. Quinones
                                             Lori L. Viera

15                                     Attorneys for Defendant,
                                       CAPACITY OF TEXAS, INC.

16

17                                     **WILSON TURNER KOSMO LLP**

18

19                                     By: _____

20                                           Robert A. Shields
                                             Sotera L. Anderson

21                                     Attorneys for Defendants,
                                       CUMMINS INC. and CUMMINS DIESEL

22                                     SALES CORPORATION

23

24

25

26

27

28

**DEFENDANTS' NOTICE OF REMOVAL**

# Exhibit "A"

1   Stephen Heller, APC • State Bar No. 59485
2   Shayne Heller LaChapelle • State Bar No. 218360
    THE HELLER LAW FIRM
3   24025 Park Sorrento, Suite 240
    Calabasas, California 91302-4008
4   (818) 591-6388 Fax (818) 591-6399
5   heller@hellerlaw.net
    *Lead Counsel*
6
7   Julia S. Swanson • State Bar No. 165039
    Brian McKibbin • State Bar No. 117158
8   SWANSON & McKIBBIN
9   499 North Canon Drive, 4th Floor
    Beverly Hills, California 90210
10  (310) 887-3600  Fax  (310) 878-0187
11  jswanson@jandbcolaw.com
12  Carolin Shining • State Bar No. 201140
    LAW OFFICES OF CAROLIN J. SHINING
13  5455 Wilshire Blvd Ste 1925
    Los Angeles, CA 90036
14  (310) 310-7993 Fax (310) 802-3865
15  carolin.shining@gmail.com
16
    Attorneys for Plaintiffs
17
18          SUPERIOR COURT OF THE STATE OF CALIFORNIA
19        FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT
20
21  CARLOS B. TREVINO, DONNA TREVINO, )   Case No.:
    ALEX MARINKOVICH, JENNIFER SHARP,)    **BC 462 3 23**
22  STEVEN SHARP, JOEL GRAVES,           )
    ROSEMARY GRAVES, NICKOLAS            )   COMPLAINT FOR DAMAGES
23  VITALICH, SHARON VITALICH, GILBERT)
    OLGUIN, SANDRA OLGUIN, RALPH         )   • **Product Liability – Negligence**
24  ESPOSITO,  ANN ESPOSITO, MARILYN     )   • **Product Liability – Strict Liability**
    WILLIAMS, STEVE ROLDAN, CHRISTY      )   • **Loss of Consortium**
25  ROLDAN, and LOURDES RADA,            )
26                                       )
    Plaintiffs,                          )
27                                       )
28                                       )

                                        1

                          COMPLAINT FOR DAMAGES

v.

CUMMINS, INC.; CUMMINS DIESEL
SALES CORPORATION; CAPACITY OF
TEXAS, INC.; COLLINS BUS CORP.,
individually and as Successor in Interest to
subsidiary CAPACITY OF TEXAS, INC.;
DONALDSON COMPANY, INC.;
DYNAFLEX PRODUCTS; ECS TUNING;
HARBOR MARINE; PACIFIC CRANE
MAINTENANCE SERVICES, INC.; and
DOES 1 through 500, inclusive,

Defendants.

                                     DEMAND FOR JURY TRIAL

Plaintiffs allege:

## INTRODUCTION

### Parties Plaintiff

1.      At all times herein mentioned, Plaintiff CARLOS TREVINO and his wife, Plaintiff DONNA TREVINO, are and were residents of the County of Los Angeles, State of California.

2.      At all times herein mentioned, Plaintiff ALEX MARINKOVICH is and was a resident of the County of Los Angeles, State of California.

3.      At all times herein mentioned, Plaintiffs JENNIFER SHARP and her husband, Plaintiff STEVEN SHARP, are and were residents of the County of Los Angeles, State of California.

4.      At all times herein mentioned, Plaintiffs JOEL GRAVES and his wife, Plaintiff ROSEMARY GRAVES, are and were residents of the County of Los Angeles, State of California.

///

2

**COMPLAINT FOR DAMAGES**

5.     At all times herein mentioned, Plaintiffs NICKOLAS VITALICH and his wife, Plaintiff SHARON VITALICH, are and were residents of the County of Los Angeles, State of California.

6.     At all times herein mentioned, Plaintiffs GILBERT OLGUIN and his wife, Plaintiff SANDRA OLGUIN, are and were residents of the County of Los Angeles, State of California.

7.     At all times herein mentioned, Plaintiff RALPH ESPOSITO and his wife, Plaintiff ANN ESPOSITO, are and were residents of the County of Los Angeles, State of California.

8.     At all times herein mentioned, Plaintiff MARILYN WILLIAMS is and was a resident of the County of Los Angeles, State of California.

9.     At all times herein mentioned, Plaintiff STEVE ROLDAN and his wife, Plaintiff CHRISTY ROLDAN, are and were residents of the County of Los Angeles, State of California.

10.    At all times herein mentioned, Plaintiff LOURDES RADA is and was a resident of the County of Los Angeles, State of California.

11.    Plaintiffs CARLOS B. TREVINO, ALEX MARINKOVICH, JENNIFER SHARP, JOEL GRAVES, NICKOLAS VITALICH, GILBERT OLGUIN, RALPH ESPOSITO, MARILYN WILLIAMS, STEVE ROLDAN and LOURDES RADA are sometimes collectively referred to herein as the "Plaintiffs LONGSHORE WORKERS."

12.    Plaintiffs DONNA TREVINO, STEVEN SHARP, ROSEMARY GRAVES, SHARON VITALICH, SANDRA OLGUIN, ANN ESPOSITO, and CHRISTY ROLDAN are sometimes collectively referred to herein as "Plaintiffs LONGSHORE WORKERS' SPOUSES."

///

///

///

3

**COMPLAINT FOR DAMAGES**

**Parties Defendant**

13.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, Defendants CUMMINS INC. ("CUMMINS") and CUMMINS DIESEL SALES CORPORATION ("CUMMINS DIESEL") are and at all times were corporations organized and existing under the laws of the State of Indiana and are authorized to do business and are doing  business in the County of Los Angeles, State of California.

14.    Plaintiffs are informed and believe and thereon allege that Defendant CAPACITY OF TEXAS, INC. ("CAPACITY OF TEXAS") is and at all times was a corporation organized and existing under the laws of the State of Texas and is authorized to do business and is doing business in the County of Los Angeles, State of California.

15.    Plaintiffs are informed and believe and thereon allege that Defendant COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, is and at all times herein mentioned was a corporation organized and existing under the laws of the State of Kansas and is authorized to do business and is doing business in the County of Los Angeles, State of California.

16.    Plaintiffs are informed and believe and thereon allege that Defendant DONALDSON COMPANY, INC. ("DONALDSON COMPANY") is and at all times was a corporation organized and existing under the laws of the State of Minnesota and is authorized to do business and is doing business in the County of Los Angeles, State of California.

17.    Plaintiffs are informed and believe and thereon allege that Defendant DYNAFLEX PRODUCTS is and at all times was a corporation organized and existing under the laws of the State of California and is authorized to do business and is doing business in the County of Los Angeles, State of California.

///

///

4

COMPLAINT FOR DAMAGES

18.     Plaintiffs are informed and believe and thereon allege that Defendant ECS TUNING is and at all times was a corporation organized and existing under the laws of the State of Ohio and is authorized to do business and is doing business in the County of Los Angeles, State of California.

19.     Plaintiffs are informed and believe and thereon allege that Defendant HARBOR MARINE ("HARBOR MARINE") is and at all times was a corporation organized and existing under the laws of the State of California and is authorized to do business and is doing business in the County of Los Angeles, State of California.

20.     Plaintiffs are informed and believe and thereon allege that Defendant PACIFIC CRANE MAINTENANCE SERVICES, INC. ("PACIFIC CRANE") is and at all times was a corporation organized and existing under the laws of the State of California and is authorized to do business and is doing business in the County of Los Angeles, State of California.

21.     The true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 500, inclusive (the "DOE Defendants"), are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to show their true names and capacities when the same have been ascertained.

22.     The DOE Defendants are and at all times herein mentioned were corporations organized and existing under the laws of the State of California or organized and existing in other foreign jurisdictions and are or were authorized to do business in the State of California.

23.     Plaintiffs are informed and believe and thereon allege that each of the DOE Defendants is legally responsible in some manner for the events and happenings herein described, and for the damages legally caused thereby. Plaintiffs are further informed and believe and thereon allege that the acts of each and every Defendant and the DOE Defendants were ratified and confirmed by each and every other Defendant and DOE Defendant.

**COMPLAINT FOR DAMAGES**

**Non-Parties Related to the Instant Litigation**

24.    Plaintiffs are informed and believe and thereon allege that the PORT OF LOS ANGELES is a quasi-governmental agency operated by the CITY OF LOS ANGELES and that the PORT OF LOS ANGELES operates as the lessor of various shipping docks located in San Pedro, California.

25.    Plaintiffs are informed and believe and thereon allege that the PORT OF LONG BEACH is a quasi-governmental agency operated by the CITY OF LONG BEACH and that the PORT OF LONG BEACH operates as the lessor of various shipping docks located in Long Beach, California.

26.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, PACIFIC MARITIME ASSOCIATION was the "payroll employer" of the Plaintiffs LONGSHORE WORKERS.

27.    Plaintiffs LONGSHORE WORKERS working at the PORT OF LOS ANGELES and the PORT OF LOS ANGELES (sometimes hereafter collectively referred to as "the PORTS") are members of a union known as the INTERNATIONAL LONGSHORE & WAREHOUSE WORKERS ASSOCIATION LOCAL 13 (LOCAL 13).

28.    Plaintiffs are informed and believe and thereon allege that EAGLE MARINE SERVICES ("EAGLE MARINE"), HANJIN SHIPPING, STEVEDORING SERVICES OF AMERICA ("STEVEDORING SERVICES") are stevedore companies at the PORTS (hereafter, collectively, "STEVEDORE COMPANIES").

**GENERAL ALLEGATIONS**

29.    Plaintiffs LONGSHORE WORKERS, during the course and scope of their employment, use specialized semi-tractor trailer rigs at the PORTS, sometimes referred to as "UTILITY TRACTOR RIGS" ("UTRs") which are used to transport large containers which have been off-loaded from ships and are, in turn, hauled by the UTRs to storage areas or transported to railroad yards or trucking depots for further handling.

6

COMPLAINT FOR DAMAGES

30.     Plaintiffs are informed and believe and thereon allege that during all relevant times herein, Defendants CUMMINS and CUMMINS DIESEL were the manufacturers and/or suppliers of UTRs to the PORTS and that Defendant CUMMINS DIESEL was at all times herein the authorized agent of Defendant CUMMINS in California.

31.     Plaintiffs are informed and believe and thereon allege that Defendants HARBOR MARINE, PACIFIC CRANE and the DOE Defendants, and each of them, were responsible for the maintenance, upkeep and repair of the UTRs at the PORTS.

32.     Plaintiffs are informed and believe and thereon allege that Defendants DONALDSON COMPANY, DYNAFLEX PRODUCTS and ECS TUNING and each of them, were responsible for the manufacture and fabrication of Diesel Engine Particulate Filters (hereafter sometimes referred to as "DPFs") used on the UTRs at the PORTS.

### BRIEF SUMMARY OF FACTS

#### Emission of Toxic Substances by UTRs

33.     In mid-2009, in an effort to comply with a nationwide effort and environmental laws to lower emission of pollutants and toxic substances into the air at the PORTS, Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC. (hereafter sometimes referred to collectively as "Defendants")and the DOE Defendants, and each of them,  undertook to retrofit and retrofitted the UTRs with devices known as Diesel Engine Particular Filters, specifically designed to "burn off" or otherwise reduce diesel fuel emissions (including but not limited to noxious gases and particulate matter) and other pollutants containing, *inter alia*, carbon monoxide, nitric oxide, sulphur dioxide,

7

COMPLAINT FOR DAMAGES

aldehydes, unburned hydrocarbons, and other particulate matter (hereafter, "carbon monoxide and other noxious gases"). When DPFs' sensors detect a pre-set level of contamination, they are designed to commence a process known as "burning" or "regeneration" which heats the filtered materials to extremely high temperatures thereby rendering the contaminants harmless or otherwise greatly reducing their toxicity. The burned or regenerated fumes and other contaminants are then discharged from the filter into the atmosphere  thereby preventing toxic fumes/contaminants from entering the cab of the UTRs and exposing the drivers, namely Plaintiffs LONGSHORE WORKERS, to risk of injury.

34.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants and the DOE Defendants, and each of them, *inter alia*, designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained the UTRs and the DPFs which are used, *inter alia*, in the maritime shipping industry including at the PORTS.

35.     Plaintiffs are further informed and believe and thereon allege that, at all times herein mentioned, Defendants , CUMMINS, CUMMINS DIESEL, CAPACITY OF TEXAS, COLLINS BUS CORP., DONALDSON COMPANY, DYNAFLEX PRODUCTS, ECS TUNING, and the DOE Defendants, and each of them, sold DPFs and DPF-equipped UTRs to the STEVEDORE COMPANIES.

36.     Plaintiffs are further informed and believe and thereon allege that, at all times herein mentioned, Defendants CUMMINS, CUMMINS DIESEL, CAPACITY OF TEXAS, COLLINS BUS CORP., HARBOR MARINE, PACIFIC CRANE, and the DOE Defendants, and each of them, installed or maintained the DPF-equipped UTRs used by Plaintiffs LONGSHORE WORKERS at the PORTS.

///

///

COMPLAINT FOR DAMAGES

37.     Plaintiffs are informed and believe and thereon allege that since mid-2009, DPFs attached or retro-fitted by Defendants CUMMINS, CUMMINS DIESEL, CAPACITY OF TEXAS, COLLINS BUS CORP., HARBOR MARINE, PACIFIC CRANE, and the DOE Defendants, and each of them, to the cabs of the UTRs operated by Plaintiffs LONGSHORE WORKERS were designed for large semi-tractor trailers and other diesel-powered vehicles which are typically driven at speeds in excess of 55 miles per hour.

38.     The UTRs used at the PORTS by Plaintiffs LONGSHORE WORKERS are designed to operate at speeds not to exceed 35 miles per hour and are typically operated at average speeds of five to 25 miles per hour.

39.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, because UTRs are operated at speeds lower than 55 miles per hour, the "burned/regenerated" fumes and material including carbon monoxide and other noxious substances associated with diesel fumes were not fully dispersed and significant amounts of non-burned/non-regenerated fumes leaked or otherwise infiltrated into the cabs of the UTRs operated by Plaintiffs LONGSHORE WORKERS and were a legal cause of Plaintiffs LONGSHORE WORKERS' injuries as set forth, *infra*.

40.     Defendant and the DOE Defendants, and each of them, equipped the UTRs with devices known as "regeneration lights" to alert UTR drivers of unsafe levels of carbon monoxide inside the cab of the UTR but the devices failed to properly activate.  As a result, drivers of the DPF-equipped UTRs were unaware that they were being exposed to significant amounts of non-burned/non-regenerated fumes including carbon monoxide and other harmful levels of noxious substances.

///
///
///

9

**COMPLAINT FOR DAMAGES**

41.    Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants and the DOE Defendants, and each of them, knew that the DPFs only activated when a vehicle's speed was 55 miles per hour or greater but nonetheless, *inter alia*, packaged, labeled, distributed, installed, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained the DPFs for use on UTRs.

42.    The conduct of Defendants and the DOE Defendants, and each of them, as described herein was done with a conscious disregard of the rights of Plaintiffs LONGSHORE WORKERS and Plaintiffs LONGSHORE WORKERS' SPOUSES and with the intent to vex, injure or annoy said Plaintiffs, such as to constitute oppression, fraud or malice as defined by California *Civil Code* section 3294, entitling said Plaintiffs to punitive damages in an amount appropriate to punish or set an example of said Defendants, and the DOE Defendants, and each of them.

43.    As a legal result of the aforesaid acts, omissions and conduct of Defendants and the DOE Defendants, and each them, Plaintiffs LONGSHORE WORKERS sustained general damages within the jurisdiction of the Superior Court.

**Plaintiffs LONGSHORE WORKERS'**

**Exposure to Noxious Gases**

**and**

**Injuries Sustained Thereby**

44.    At all times herein mentioned, Plaintiffs LONGSHORE WORKERS held "Class A" Longshoremen classifications which authorized them to operate UTRs on a full-time basis.

45.    Plaintiffs LONGSHORE WORKERS are informed and believe and thereon allege that commencing in approximately mid-2009, to the present, each of them was exposed to harmful levels of, *inter alia*, carbon monoxide and other noxious

10

COMPLAINT FOR DAMAGES

1  gases associated with diesel fumes which leaked into the cabs of their respective UTRs

2  equipped with Defendants' DPFs and that said carbon monoxide/diesel fumes and

3  toxic substances were the legal cause of their injuries and damages as hereinafter set

4  forth.  Driving the DPF-equipped UTRs caused each of the Plaintiffs LONGSHORE

5  WORKERS to sustain, *inter alia*, reduced lung function/respiratory illness and

6  cognitive impairment, *et cetera*, as described below.  Each additional and subsequent

7  exposure further exacerbated their respective existing injuries from their earlier

8  respective exposures.

9       46.  Diesel exhaust is a mixture of gases and "Diesel Particulate Matter."

10  UTRs driven by Plaintiffs LONGSHORE WORKERS at the PORTS ran on a specific

11  type of a diesel fuel known as "Ultra Low Sulfur Diesel Fuel" (sometimes referred

12  herein as "UTR Diesel"), a mixture of hydrocarbons, including paraffins,

13  cycloparaffins, olefins and polycyclic aromatics.  UTR Diesel also contains the typical

14  components found in diesel exhaust, *i.e.*, carbon monoxide, nitric oxide, nitrogen

15  dioxide, sulphur dioxide, aldehydes, polycyclic aromatic hydrocarbons and their

16  derivatives. UTR Diesel fuel is used primarily in the agriculture applications because

17  its components are significantly more toxic than the "regular"diesel fuels used in non-

18  agricultural applications, such as at the PORTS.

19       47.  As set forth, *infra*, due to defects in the DPFs, carbon monoxide and other

20  noxious gases associated with UTR Diesel fumes from the DPF-equipped UTRs leaked

21  or otherwise infiltrated into the UTRs' cabs while the UTRs were being operated by

22  Plaintiffs LONGSHORE WORKERS.  As a legal result of their respective combined

23  acute/peak and long-term chronic exposure to the above-described carbon monoxide

24  and the other noxious gases associated with the above-described fumes from UTR

25  Diesel, each of the Plaintiffs LONGSHORE WORKERS was exposed to harmful levels

26  of UTR Diesel exhaust fumes.

27  ///

28

COMPLAINT FOR DAMAGES

48.     The known effects of acute and long-term chronic exposure to harmful levels of carbon monoxide include but are not limited to, *inter alia*, injury to the brain including cognitive impairment and memory loss.

49.     The known effects of acute and long-term chronic exposure to harmful levels of nitric oxide, nitrogen dioxide, sulphur dioxide and aldehyde include but are not limited to, *inter alia*, injury to lung tissue leading to susceptibility to respiratory disease, asthma and emphysema.

50.     The known effects of acute and chronic exposure to harmful levels of polycyclic aromatic hydrocarbons include but are not limited to, *inter alia*, injury to red blood cells which causes anemia and can also compromise the immune system.

51.     Diesel Particulate Matter is invisible to the naked eye and consists of easily inhaled particles which become imbedded in the lungs and have a demonstrably adverse effect on respiratory and pulmonary function.

52.     As more particularly set forth below, as a legal result of their exposure to carbon monoxide and other noxious gases associated with UTR Diesel, each of the Plaintiff LONGSHORE WORKERS suffered serious permanent and irreversible damage, *e.g.*, compromise to their respiratory systems and/or permanent and irreversible cognitive impairment.

A.     **Plaintiff Carlos Trevino ("Mr. Trevino")**

53.     On or about May 28, 2009, Mr. Trevino, during the course and scope of his employment with CALIFORNIA UNITED TERMINALS, was driving a DPF-equipped UTR running on UTR Diesel at the PORT OF LONG BEACH and was hauling a container from a cargo ship for delivery to the main yard when he became aware of a strong and unusual odor emanating from the UTR.  Upon exiting the rear door of his UTR, he was engulfed in smoke which caused him to sustain, *inter alia*, difficulty breathing and other maladies caused by carbon monoxide and other elements of diesel exhaust fumes and which required treatment by paramedics.   54.

12

COMPLAINT FOR DAMAGES

1    Subsequent to Mr. Trevino's initial exposure to the above-described fumes from

2    UTR Diesel, he was subjected to ongoing and continuous exposure to carbon monoxide

3    and other noxious gases associated with driving DPF-equipped UTRs running on UTR

4    Diesel.

5    **B.    Plaintiff Alex Marinkovich ("Mr. Marinkovich")**

6        55.    In mid-2009, Mr. Marinkovich, during the course and scope of his

7    employment with EAGLE MARINE in the PORT OF LOS ANGELES, drove the above-

8    described DPF-equipped UTRs running on UTR Diesel.

9        56.    On October 14, 2009, Mr. Marinkovich was driving a DPF-equipped UTR

10   running on UTR Diesel, at Terminal 320 in the PORT OF LONG ANGELES, when the

11   above-described fumes from UTR Diesel entered his cab which compromised his

12   breathing and vision and caused dizziness necessitating care by paramedics who

13   transported him to San Pedro Hospital.

14       57.    Subsequent to Mr. Marinkovich's initial exposure to carbon monoxide

15   and other noxious gases associated with the above-described fumes from UTR Diesel,

16   *supra,* he was subjected to ongoing and continuous exposure to carbon monoxide and

17   other elements of diesel exhaust fumes while driving DPF-equipped UTRs running on

18   UTR Diesel and was transported by ambulance to a local Emergency Room on multiple

19   occasions thereafter, *i.e.,* on October 29, 2009, November 5, 2009, November 24, 2009,

20   April 7, 2010, and September 3, 2010, each time for breathing difficulties due to said

21   exposure.  He was ultimately unable to work because of, *inter alia,* ongoing respiratory

22   problems, nausea, coughing, fatigue, memory loss, cognitive impairment, *et cetera,* all

23   of which are consistent with exposure to carbon monoxide.

24   ///

25   ///

26   ///

27   ///

28

13

**COMPLAINT FOR DAMAGES**

C.    **Plaintiff Jennifer Sharp ("Ms. Sharp")**

58.    Commencing in mid-2009, Ms. Sharp, during the course and scope of her employment with EAGLE MARINE, drove the above-described DPF-equipped UTRs running on UTR Diesel at Terminal 140 in the PORT OF LOS ANGELES.

59.    On November 14, 2009, Ms. Sharp was driving a DPF-equipped UTR at Terminal 140 during the course and scope of her employment when she was overcome by carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel which infiltrated the cab of her UTR causing her to become disoriented and confused, all of which required medical care and monitoring.

60.    Subsequent to Ms. Sharp's initial exposure to carbon monoxide and other noxious gases associated with the above-described fumes, *supra*, she was subjected to ongoing and continuous exposure to carbon monoxide and other elements of diesel exhaust fumes while driving the DPF-equipped UTRs running on UTR Diesel.

D.    **Plaintiff Joel Graves ("Mr. Graves")**

61.    On December 19, 2009, Mr. Graves, during the course and scope of his employment with EAGLE MARINE, was driving a DPF-equipped UTR running on UTR Diesel at the PORT OF LOS ANGELES when the "regeneration light" inside the UTR dashboard failed to activate and the cab filled with carbon monoxide and other noxious gases associated with the above-described fumes which caused him to sustain, *inter alia*, difficulty breathing and other maladies caused by such exposure. Subsequent to his initial exposure to the above-described fumes from UTR Diesel, *supra*, he was subjected to ongoing and continuous exposure to carbon monoxide and other noxious gases associated with the above-described fumes driving DPF-equipped UTRs running on UTR Diesel.

///

///

///

14

**COMPLAINT FOR DAMAGES**

**E.     Plaintiff Nicholas Vitalich ("Mr. Vitalich")**

62.     In or about November 2009, Mr. Vitalich, during the course and scope of his employment with EAGLE MARINE at the PORT OF LOS ANGELES and at STEVEDORING SERVICES and HANJIN at the PORT OF LONG BEACH, operated a DPF-equipped UTR running on UTR Diesel and experienced difficulty breathing and other maladies caused by carbon monoxide and other elements of diesel exhaust fumes.

63.     Subsequent to his initial exposure to the above-described fumes from UTR Diesel, *supra*, he was subjected to ongoing and continuous exposure to carbon monoxide and other noxious gases associated with the above-described fumes from driving DPF-equipped UTRs running on UTR Diesel.

**F.     Plaintiff Ralph Esposito ("Mr. Esposito")**

64.     Ralph Esposito received his Class A classification in 2000, and since then he has driven UTRs in the PORTS.  On March 13, 2010, Mr. Esposito, during the course and scope of his employment with EAGLE MARINE, was driving a DPF-equipped UTR running on UTR Diesel at Terminal 302 in the PORT OF LOS ANGELES when the cab filled with carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel which caused him to sustain, *inter alia*, difficulty breathing and other maladies caused by such exposure necessitating treatment by paramedics and treatment at a local Emergency Room.

65.     Subsequent to his initial exposure to the above-described fumes from UTR Diesel, he was subjected to ongoing and continuous exposure to carbon monoxide and other noxious gases associated with the above-described fumes from driving DPF-equipped UTRs running on UTR Diesel.

///

///

///

15

**COMPLAINT FOR DAMAGES**

**G.     Plaintiff Gilbert Olguin ("Mr. Olguin")**

66.     Mr. Olguin started as a full time longshoreman for the PORTS in 1998.  In or about July, 2009, Mr. Olguin, during the course and scope of his employment with YUSEN TERMINALS, located on Terminal Island in the PORT OF LOS ANGELES, was driving a DPF-equipped UTR running on UTR Diesel at Terminal 214, when the cab filled with carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel.

67.     Thereafter, commencing in or about October 2009,  while employed by EAGLE MARINE, Mr. Olguin was exposed on multiple occasions while driving the DPF-equipped UTRs running on UTR Diesel, when the cab was repeatedly filled with carbon monoxide and other exhaust fumes.  This ongoing and continuous exposure to carbon monoxide and other noxious gases associated with the above-described fumes from driving DPF-equipped UTRs running on UTR Diesel caused him to sustain, *inter alia*, difficulty breathing and other maladies caused by such exposure.

**H.     Plaintiff Steve Roldan ("Mr. Roldan")**

68.     Commencing in September 2009, Mr. Roldan, during the course and scope of his employment with MAERSK at the PORT OF LOS ANGELES, STEVEDORING SERVICES at Terminals 94, 245 and 266, and HANJIN's Terminal 140 at the PORT OF LONG BEACH was driving the DPF-equipped UTRs running on UTR Diesel when he was exposed to carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel which caused him to sustain, *inter alia*, difficulty breathing and other maladies caused by such exposure.

69.     Subsequent to his initial exposure to the above-described fumes from UTR Diesel, he was subjected to ongoing and continuous exposure to carbon monoxide and other noxious gases associated with the above-described fumes from driving DPF-equipped UTRs running on UTR Diesel.

///

COMPLAINT FOR DAMAGES

I.    **Plaintiff Lourdes Rada ("Ms. Rada")**

70.   Commencing in 1997, Ms. Rada, during the course and scope of her employment with different terminals at the PORT OF LOS ANGELES, drove UTRs. On March 25, 2011, Ms. Rada was driving an above-described DPF-equipped UTR running on UTR Diesel at Terminal 302 in the PORT OF LOS ANGELES during the course and scope of her employment with EAGLE MARINE when she was overcome by carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel inside the cab causing her to become disoriented and confused, all of which all of which required medical care and monitoring.

71.   Subsequent to Ms. Rada's initial exposure to carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel, she was subjected to ongoing and continuous exposure to carbon monoxide and other elements of diesel exhaust fumes while driving DPF-equippedUTRs running on UTR Diesel.

J.    **Plaintiff Marilyn Williams ("Ms. Williams")**

72.   Commencing in 1984, Ms. Williams, during the course and scope of her employment with various terminals in the PORT OF LONG BEACH and PORT OF LOS ANGELES, was a full-time UTR driver.

73.   In October, 2009, Ms. Williams was driving an above-described DPF-equipped UTR running on UTR Diesel at Terminal 302 during the course and scope of her employment with EAGLE MARINE, when she was overcome by carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel inside the cab causing her to become disoriented and confused, all of which all of which required medical care and monitoring. Subsequent to Ms. Williams' initial exposure to carbon monoxide and other noxious gases associated with the above-described fumes from UTR Diesel, she was subjected to ongoing and continuous exposure to carbon monoxide and other elements of diesel exhaust fumes while driving DPF-equipped UTRs running on UTR Diesel.

17

**COMPLAINT FOR DAMAGES**

### Plaintiffs LONGSHORE WORKERS' Damages

74. As a legal result of the conduct of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS, and each of them, were hurt and injured in health, strength and activities, sustaining injury to their respective bodies and shock and injury to their respective nervous systems and persons, including pulmonary impairment and cognitive impairment, all of which are consistent with exposure to carbon monoxide and all of which were exacerbated by subsequent exposures and all of which have caused and continue to cause each of them great mental, physical and nervous pain and suffering. Each of the Plaintiff LONGSHORE WORKERS is informed and believes and therefore alleges that said injuries will result in some permanent disability.

75. Solely and legally as a result of the conduct of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS, and each of them, incurred indebtedness for physicians, hospitalization, x-rays, drugs and sundries in the treatment of their respective injuries, in an amount which each of them is unable at this time to ascertain, and will become obligated in the further treatment of the injuries for an indefinite period of time in the future. Plaintiffs will ask leave of Court to amend this Complaint to show the same when ascertained.

76. As a legal result of the conduct of Defendants and the DOE Defendants, and each them, Plaintiffs LONGSHORE WORKERS, and each of them, has suffered loss of income and will continue to suffer loss of income in the future, in an amount which is not known at this time. Plaintiffs will ask leave of Court to amend this Complaint to show the same when ascertained.

///

///

///

///

18

**COMPLAINT FOR DAMAGES**

**FIRST CAUSE OF ACTION**

**(PRODUCTS LIABILITY – NEGLIGENCE)**

**ALL PLAINTIFFS LONGSHORE WORKERS**

v.

**DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION;**

**CAPACITY OF TEXAS, INC.; COLLINS BUS CORP.,**

**individually and as Successor in Interest to subsidiary**

**CAPACITY OF TEXAS, INC.; DONALDSON COMPANY, INC.; DYNAFLEX**

**PRODUCTS; ECS TUNING; HARBOR MARINE;**

**PACIFIC CRANE MAINTENANCE SERVICES, INC.**

**and**

**DOES 1 through 100, inclusive**

77.    Plaintiffs LONGSHORE WORKERS hereby incorporate each of the preceding paragraphs as though set forth in full.

78.    At all times herein mentioned, Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; HARBOR MARINE; DONALDSON COMPANY; DYNAFLEX PRODUCTS; ECS TUNING; PACIFIC CRANE MAINTENANCE SERVICES, INC. and the DOE Defendants, and each of them, *inter alia*, designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained the DPF-equipped UTRs such that they were dangerous and unsafe for their respective intended uses.

///

///

///

///

19

**COMPLAINT FOR DAMAGES**

79.     At all times herein mentioned, Defendants and the DOE Defendants, and each of them, had a duty, *inter alia*, to design, test, manufacture, assemble, package, label, distribute, install, inspect, construct, fabricate, analyze, recommend, merchandise, advertise, promote, deliver, sell, retrofit, repair, maintain, *et cetera*, the UTRs and the DPFs like the ones used and operated by Plaintiffs LONGSHORE WORKERS and a duty to warn Plaintiffs LONGSHORE WORKERS about, *inter alia*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs running on UTR Diesel which exposed drivers, such as Plaintiffs herein, to unreasonably high risks of injury or harm from exposure to toxic fumes and contaminants entering the cab of an UTR as set forth herein, *et cetera*.

80.     At all times herein mentioned, Defendants and the DOE Defendants, and each of them, knew or in the exercise of reasonable care should have known, *inter alia*, that DPF-equipped UTRs running on UTR Diesel, if not properly designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained, and if Defendants failed to warn of the above-described hazards of operating DPF-equipped UTRs running on UTR Diesel (and/or other diesel fuel), said UTRs would be unsafe for the uses and purposes for which they were intended in that, *inter alia*, they were likely to expose Plaintiffs LONGSHORE WORKERS to unsafe levels of carbon monoxide and other noxious gases associated with UTR Diesel.

81.     Defendants and the DOE Defendants, and each of them, so negligently and carelessly designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold and retrofitted the DPF-equipped UTR and negligently, warned or failed to warn about, *inter alia*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs running on

20

**COMPLAINT FOR DAMAGES**

1  UTR Diesel which exposed drivers, such as Plaintiff herein, to an unreasonably high
2  risk of injury or harm from exposure to toxic fumes and contaminants entering the cab
3  of DPF-equipped UTRs as set forth herein, *et cetera,* such that they were defective and
4  dangerous products and unsafe for the uses and purposes for which they were
5  intended when used as recommended by said Defendants and the DOE Defendants,
6  and each of them.

7      82.    As a legal result of the above-described malfeasance and misfeasance of
8  Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE
9  WORKERS were exposed to unsafe levels of carbon monoxide and other noxious gases
10  associated with UTR Diesel.

11      83.    As a legal result of the above-described malfeasance and misfeasance of
12  Defendants and the DOE Defendants,  and each of them,  Plaintiffs LONGSHORE
13  WORKERS sustained the injuries and damages as alleged, *supra.*

14      84.    The conduct of Defendants and the DOE Defendants, and each of them,
15  as described herein entitles Plaintiffs to punitive damages on the basis as set forth *infra.*

16      85.    As a legal result of the foregoing, Plaintiffs LONGSHORE WORKERS
17  suffered general damages in an amount within the jurisdiction of the Superior Court.

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

**COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION

### (PRODUCTS LIABILITY – STRICT LIABILITY)

by

ALL PLAINTIFFS LONGSHORE WORKERS

v.

DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION;

CAPACITY OF TEXAS, INC.; COLLINS BUS CORP.,

individually and as Successor in Interest to subsidiary

CAPACITY OF TEXAS, INC.; DONALDSON COMPANY, INC.; DYNAFLEX

PRODUCTS; ECS TUNING; HARBOR MARINE;

PACIFIC CRANE MAINTENANCE SERVICES, INC.

and

DOES 1 through 100, inclusive

86.    Plaintiffs LONGSHORE WORKERS hereby incorporate each of the preceding paragraphs as though set forth in full.

87.    Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC. and the DOE Defendants, and each of them, *inter alia*, designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered and sold the UTRs and DPFs to be used for the above-described purposes.

88.    The UTRs and DPFs were unsafe for their intended use by reason of defects, *inter alia*, in their design, testing, manufacture, assembly, packaging, labeling, distribution, installation, inspection, construction, fabrication, analysis, recommendation, merchandising, advertising, promotion, delivery, sale and handling,

22

COMPLAINT FOR DAMAGES

in that when put to their respective intended uses, they exposed Plaintiffs LONGSHORE WORKERS operating DPF-equipped UTRs running on UTR Diesel (and/or other diesel fuel) to unsafe levels of carbon monoxide and other noxious gases associated with UTR Diesel as set forth herein, *supra*.

89.   At all times herein mentioned, Plaintiffs LONGSHORE WORKERS were operating their respective DPF-equipped UTRs running on UTR Diesel (or other diesel fuel) in a manner for which they were foreseeably intended to be used, and as a legal result of the defects previously described (as well as other defects presently unknown to Plaintiffs LONGSHORE WORKERS), and as a legal result of failures to warn by Defendants and the DOE Defendants, and each of them, of such defects (*e.g.*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs running on UTR Diesel which exposed drivers, such as Plaintiff herein, to an unreasonably high risk of injury or harm from exposure to toxic fumes and contaminants entering the cab of an UTR as set forth herein), Plaintiffs were exposed to unsafe levels of carbon monoxide and other noxious gases associated with UTR Diesel as set forth herein, *supra*.

90.   As a further legal result of the above-described malfeasance and misfeasance of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS sustained the injuries and damages as alleged, *supra*.

91.   The conduct of Defendants and the DOE Defendants, and each of them, as described herein, entitles Plaintiffs to punitive damages on the basis set forth *supra*.

92.   As a further legal result of the foregoing, Plaintiffs LONGSHORE WORKERS sustained general damages in an amount within the jurisdiction of the Superior Court.

///
///
///

23

**COMPLAINT FOR DAMAGES**

**THIRD CAUSE OF ACTION**

**(LOSS OF CONSORTIUM)**

**ALL PLAINTIFFS LONGSHORE WORKERS' SPOUSES**

**v.**

**DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION;**

**CAPACITY OF TEXAS, INC.; COLLINS BUS CORP.,**

**individually and as Successor in Interest to subsidiary**

**CAPACITY OF TEXAS, INC.; DONALDSON COMPANY, INC.; DYNAFLEX**

**PRODUCTS; ECS TUNING; HARBOR MARINE;**

**PACIFIC CRANE MAINTENANCE SERVICES, INC.**

**and**

**DOES 1 through 100, inclusive**

93.    Plaintiffs LONGSHORE WORKERS' SPOUSES hereby incorporate each of the preceding paragraphs as though set forth in full.

94.    At all times herein mentioned, Plaintiffs DONNA TREVINO, STEVEN SHARP, ROSEMARY GRAVES, SHARON VITALICH, SANDRA OLGUIN, ANN ESPOSITO, and CHRISTY ROLDAN (hereafter, collectively, Plaintiffs LONGSHORE WORKERS' SPOUSES) were married to their respective spouses, Plaintiffs LONGSHORE WORKERS.

95.    Prior to the events as set forth herein, *supra,* the above-referenced legally married Plaintiffs LONGSHORE WORKERS were able to and did perform their respective duties as husbands and wives.  Subsequent to their respective severe disabling injuries sustained by each of the legally married Plaintiffs LONGSHORE WORKERS, and as a direct and legal result thereof, Plaintiffs LONGSHORE WORKERS have been unable to perform their duties as husbands and wives to their respective Plaintiffs LONGSHORE WORKERS' SPOUSES.

///

///

24

COMPLAINT FOR DAMAGES

96.     As a direct and legal result thereof, Plaintiffs LONGSHORE WORKERS' SPOUSES have each been deprived of and will in the future be deprived of their respective husband's/wife's love, companionship, comfort, affection, society, solace, moral support and deprived of the physical assistance in the operation and maintenance of their home and the enjoyment of sexual relations.

97.     By reason of the foregoing, Plaintiffs LONGSHORE WORKERS' SPOUSES have been deprived the duties of their respective Plaintiffs LONGSHORE WORKERS husbands and wives, all to their further damage in a sum according to proof at trial.

98.     Plaintiffs LONGSHORE WORKERS' SPOUSES are informed and believe and thereon allege that the injuries sustained by their respective Plaintiffs LONGSHORE WORKERS husbands and wives will result in some permanent deprivation of the work and services of Plaintiffs LONGSHORE WORKERS, all to the further damage of Plaintiffs LONGSHORE WORKERS' SPOUSES.

99.     The conduct of Defendants and the DOE Defendants, and each of them, as described herein, entitles Plaintiffs LONGSHORE WORKERS' SPOUSE to punitive damages on the basis as set forth *supra*.

100.    As a legal result of the foregoing, Plaintiffs LONGSHORE WORKERS' SPOUSES sustained general damages in an amount within the jurisdiction of the Superior Court.

///
///
///
///
///
///
///

25

COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiffs pray for judgment against the defendants, and each of them, as follows:

1.   For general damages according to proof, with pre-judgment interest thereon at the legal rate as permitted by law;

2.   For compensatory damages;

3.   For punitive damages;

4.   For medical related expenses according to proof;

5.   For loss of income according to proof;

6.   For costs of suit herein incurred; and

7.   For such other and further relief as the Court may deem appropriate.

DATED:   May 26, 2011                     SWANSON & McKIBBIN

By: _____
JULIA SWANSON
Attorneys for Plaintiffs

25

COMPLAINT FOR DAMAGES

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED:  May 26, 2011                    SWANSON & McKIBBIN

                                        By: _____
                                            JULIA SWANSON
                                            Attorneys for Plaintiffs

26

COMPLAINT FOR DAMAGES

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Julia S. Swanson, Esq. (SBN: 165039); Brian T. McKibbin, Esq. (SBN: 117158)
SWANSON & McKIBBIN, LLP
499 North Canon Drive, 4th Flr.
Beverly Hills, CA 90210
TELEPHONE NO: 310/887-3600    FAX NO: 310/878-0187
ATTORNEY FOR (Name): Plaintiffs, CARLOS TREVINO, et al.

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 2 6 2011

John A. Clarke, Executive Officer/Clerk

By _____ , Deputy
ROSINA LOPEZ

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
TREVINO, et al. v. CUMMINS, INC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 4 6 2 3 2 3<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[✓] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action (specify): 3
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: May 25, 2011

Julia S. Swanson, Esq.
_____
(TYPE OR PRINT NAME)
       _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

BC462323

| SHORT TITLE | CASE NUMBER |
|---|---|
| TREVINO, et al. v. CUMMINS, INC., et al. | |

### CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [✓] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 14  ☐ HOURS/ [✓] DAYS

Item II.  Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

BY FAX

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 | Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 | Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070 | Asbestos Property Damage | 2. |
| | | ☐ A7221 | Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 | Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 | Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240 | Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250 | Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230 | Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270 | Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220 | Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029 | Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005 | Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 | Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 | Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 1 of 4

| SHORT TITLE:<br>TREVINO, et al. v. CUMMINS, INC., et al. | | CASE NUMBER | |

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** | Professional Negligence (25) | ☐ A6017   Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050   Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025   Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037   Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024   Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109   Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004   Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008   Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019   Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028   Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002   Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012   Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015   Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009   Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031   Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027   Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300   Eminent Domain/Condemnation     Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023   Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018   Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032   Quiet Title | 2., 6. |
| | | ☐ A6060   Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer- Commercial (31) | ☐ A6021   Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020   Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022   Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115   Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

CIV 109 03-04 (Rev. 03/06)
LASC Approved

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| TREVINO, et al. v. CUMMINS, INC., et al. | |

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☑ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE.<br>TREVINO, et al. v. CUMMINS, INC., et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☐1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☑8. ☐9. ☐10. | ADDRESS:<br>Dynaflex Products<br>2253 Saybrook Avenue |
|---|---|
| CITY:<br>Commerce | STATE:<br>CA | ZIP CODE:<br>90040 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the <u>Stanley Mosk</u> courthouse in the <u>Central</u> District of the Los Angeles Superior Court  (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: <u>May 26, 2011</u>

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

NOTICE SENT TO:

Heller, Stephen H.
The Heller Law Firm
24025 Park Sorrento, Suite 240
Calabasas         CA  91302-4008

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

**MAY 3 1 2011**

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
Takeisha Tennyson

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | CASE NUMBER |
|---|---|---|
| CARLOS B TREVINO ET AL | Plaintiff(s), | BC462323 |
| VS. | | |
| CUMMINS INC ET AL | Defendant(s). | **NOTICE OF CASE MANAGEMENT CONFERENCE** |

**TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for _September 23, 2011_ at _8:30 am_ in _Dept. 31_ at **111 North Hill Street, Los Angeles, California 90012.**

**NOTICE TO DEFENDANT:**    **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b) and California Rules of Court 2.2 et seq.

Date: _May 31, 2011_

_____
Judicial Officer
**ALAN S. ROSENFIELD**

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[✓] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.

Date: _May 31, 2011_

John A. Clarke, Executive Officer/Clerk

by _J. Tennyson_, Deputy Clerk

LACIV 132 (Rev. 09/07)                                                   Cal. Rules of Court, rule 3.720-3.730

1   Stephen Heller, APC • State Bar No. 59485
2   Shayne Heller LaChapelle • State Bar No. 218360
    THE HELLER LAW FIRM
3   24025 Park Sorrento, Suite 240
    Calabasas, California 91302-4008
4   (818) 591-6388 Fax (818) 591-6399
5   heller@hellerlaw.net
    Lead Counsel
6
7   Julia S. Swanson • State Bar No. 165039
    Brian McKibbin • State Bar No. 117158
8   SWANSON & McKIBBIN
    499 North Canon Drive, 4ᵗʰ Floor
9   Beverly Hills, California 90210
10  (310) 887-3600  Fax  (310) 878-0187
    jswanson@jandbcolaw.com
11
12  Carolin Shining • State Bar No. 201140
    LAW OFFICES OF CAROLIN K. SHINING
13  5455 Wilshire Blvd Ste 1925
    Los Angeles, CA 90036
14  (310) 310-7993 Fax (310) 802-3865
15  carolin.shining@gmail.com
16  Attorneys for Plaintiffs
17
18          SUPERIOR COURT OF THE STATE OF CALIFORNIA
         FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT
19
    CARLOS B. TREVINO, et al,            )   Case No.:   BC 462323
20                                        )
            Plaintiffs,                   )
21                                        )
                                          )   FIRST AMENDED COMPLAINT FOR
22              v.                        )   DAMAGES
                                          )
23  CUMMINS, INC.; et al.,                )   • Product Liability – Negligence
                                          )   • Product Liability – Strict Liability
24          Defendants.                   )   • Loss of Consortium
                                          )
25  _____ )
                                          )   Dept.: 31, Hon. Alan Rosenfield
26                                        )   Complaint filed: May 26, 2011
27
28                                            BY FAX

                                    1
    PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiffs allege:

## INTRODUCTION

### Parties Plaintiff

1.    At all times herein mentioned, Plaintiff CARLOS TREVINO and his wife, Plaintiff DONNA TREVINO, are and were residents of the County of Los Angeles, State of California.

2.    At all times herein mentioned, Plaintiff ALEX MARINKOVICH is and was a resident of the County of Los Angeles, State of California.

3.    At all times herein mentioned, Plaintiff JENNIFER SHARP and her husband, Plaintiff STEVEN SHARP, are and were residents of the County of Los Angeles, State of California.

4.    At all times herein mentioned, Plaintiff JOEL GRAVES and his wife, Plaintiff ROSEMARY GRAVES, are and were residents of the County of Los Angeles, State of California.

5.    At all times herein mentioned, Plaintiff NICKOLAS VITALICH and his wife, Plaintiff SHARON VITALICH, are and were residents of the County of Los Angeles, State of California.

6.    At all times herein mentioned, Plaintiff GILBERT OLGUIN and his wife, Plaintiff SANDRA OLGUIN, are and were residents of the County of Los Angeles, State of California.

7.    At all times herein mentioned, Plaintiff RALPH ESPOSITO and his wife, Plaintiff ANN ESPOSITO, are and were residents of the County of Los Angeles, State of California.

8.    At all times herein mentioned, Plaintiff MARILYN WILLIAMS is and was a resident of the County of Los Angeles, State of California.

9.    At all times herein mentioned, Plaintiff STEVE ROLDAN and his wife, Plaintiff CHRISTY ROLDAN, are and were residents of the County of Los Angeles,

2

1    State of California.

2        10.    At all times herein mentioned, Plaintiff LOURDES RADA is and was a

3    resident of the County of Los Angeles, State of California.

4        11.    Plaintiffs CARLOS B. TREVINO, ALEX MARINKOVICH, JENNIFER

5    SHARP, JOEL GRAVES, NICKOLAS VITALICH, GILBERT OLGUIN, RALPH

6    ESPOSITO, MARILYN WILLIAMS, STEVE ROLDAN and LOURDES RADA are

7    sometimes collectively referred to herein as the "Plaintiffs LONGSHORE WORKERS."

8        12.    Plaintiffs DONNA TREVINO, STEVEN SHARP, ROSEMARY GRAVES,

9    SHARON VITALICH, SANDRA OLGUIN, ANN ESPOSITO, and CHRISTY ROLDAN

10    are sometimes collectively referred to herein as "Plaintiffs LONGSHORE WORKERS'

11    SPOUSES."

12

13                       **Parties Defendant**

14        13.    Plaintiffs are informed and believe and thereon allege that at all times

15    herein mentioned, Defendants CUMMINS INC. ("CUMMINS") and CUMMINS

16    DIESEL SALES CORPORATION ("CUMMINS DIESEL") are and at all times were

17    corporations organized and existing under the laws of the State of Indiana and are

18    authorized to do business and are doing  business in the County of Los Angeles, State

19    of California.

20        14.    Plaintiffs are informed and believe and thereon allege that Defendant

21    CAPACITY OF TEXAS, INC. ("CAPACITY OF TEXAS") is and at all times was a

22    corporation organized and existing under the laws of the State of Texas and is

23    authorized to do business and is doing business in the County of Los Angeles,

24    State of California.

25        15.    Plaintiffs are informed and believe and thereon allege that Defendant

26    COLLINS BUS CORP., individually and as Successor in Interest to subsidiary

27    CAPACITY OF TEXAS, is and at all times herein mentioned was a corporation

28

3

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1  organized and existing under the laws of the State of Kansas and is authorized to do

2  business and is doing business in the County of Los Angeles, State of California.

3       16.    Plaintiffs are informed and believe and thereon allege that Defendant

4  CARGOTEC SOLUTIONS, LLC ("CARGOTEC SOLUTIONS"), the manufacturer of

5  Kalmar Ottawa Yard Trucks, is and at all times was a corporation organized and

6  existing under the laws of the State of Kansas and is authorized to do business and is

7  doing business in the County of Los Angeles, State of California.

8       17.    Plaintiffs are informed and believe and thereon allege that Defendant

9  DONALDSON COMPANY, INC. ("DONALDSON COMPANY") is and at all times

10 was a corporation organized and existing under the laws of the State of Minnesota and

11 is authorized to do business and is doing business in the County of Los Angeles, State

12 of California.

13      18.    Plaintiffs are informed and believe and thereon allege that Defendant

14 DYNAFLEX PRODUCTS is and at all times was a corporation organized and existing

15 under the laws of the State of California and is authorized to do business and is doing

16 business in the County of Los Angeles, State of California.

17      19.    Plaintiffs are informed and believe and thereon allege that Defendant

18 ECS TUNING is and at all times was a corporation organized and existing under the

19 laws of the State of Ohio and is authorized to do business and is doing business in the

20 County of Los Angeles, State of California.

21      20.    Plaintiffs are informed and believe and thereon allege that Defendant

22 HARBOR MARINE ("HARBOR MARINE") is and at all times was a corporation

23 organized and existing under the laws of the State of California and is authorized to do

24 business and is doing business in the County of Los Angeles, State of California.

25      21.    Plaintiffs are informed and believe and thereon allege that Defendant

26 PACIFIC CRANE MAINTENANCE SERVICES, INC. ("PACIFIC CRANE") is and at

27 all times was a corporation organized and existing under the laws of the State of

28

4

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1   California and is authorized to do business and is doing business in the County of

2   Los Angeles, State of California.

3       22.    The true names or capacities, whether individual, corporate, associate or

4   otherwise, of Defendants DOES 2 through 500, inclusive (the "DOE Defendants"), are

5   unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.

6   Plaintiffs will seek leave of Court to amend this Complaint to show their true names

7   and capacities when the same have been ascertained.

8       23.    The DOE Defendants are and at all times herein mentioned were

9   corporations organized and existing under the laws of the State of California or

10  organized and existing in other foreign jurisdictions and are or were authorized to do

11  business in the State of California.

12      24.    Plaintiffs are informed and believe and thereon allege that each of the

13  DOE Defendants is legally responsible in some manner for the events and happenings

14  herein described, and for the damages legally caused thereby.  Plaintiffs are further

15  informed and believe and thereon allege that the acts of each and every Defendant and

16  the DOE Defendants were ratified and confirmed by each and every other Defendant

17  and DOE Defendant.

18

19              **Non-Parties Related to the Instant Litigation**

20      25.    Plaintiffs are informed and believe and thereon allege that the

21  PORT OF LOS ANGELES is a quasi-governmental agency operated by the CITY OF

22  LOS ANGELES and that the PORT OF LOS ANGELES operates as the lessor of various

23  shipping docks located in San Pedro, California.

24      26.    Plaintiffs are informed and believe and thereon allege that the PORT OF

25  LONG BEACH is a quasi-governmental agency operated by the CITY OF LONG

26  BEACH and that the PORT OF LONG BEACH operates as the lessor of various

27  shipping docks located in Long Beach, California.

28

5

27.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, PACIFIC MARITIME ASSOCIATION was the "payroll employer" of the Plaintiffs LONGSHORE WORKERS.

28.     Plaintiffs LONGSHORE WORKERS working at the PORT OF LOS ANGELES and the PORT OF LOS ANGELES (sometimes hereafter collectively referred to as "the PORTS") are members of a union known as the INTERNATIONAL LONGSHORE & WAREHOUSE WORKERS ASSOCIATION LOCAL 13 (LOCAL 13).

29.     Plaintiffs are informed and believe and thereon allege that EAGLE MARINE SERVICES ("EAGLE MARINE"), HANJIN SHIPPING, STEVEDORING SERVICES OF AMERICA ("STEVEDORING SERVICES") are stevedore companies at the PORTS (hereafter, collectively, "STEVEDORE COMPANIES").

**GENERAL ALLEGATIONS**

30.     Plaintiffs LONGSHORE WORKERS, during the course and scope of their employment, use specialized semi-tractor trailer rigs at the PORTS, sometimes referred to as "UTILITY TRACTOR RIGS" ("UTRs") which are used to transport large containers which have been off-loaded from ships and are, in turn, hauled by the UTRs to storage areas or transported to railroad yards or trucking depots for further handling.

31.     Plaintiffs are informed and believe and thereon allege that during all relevant times herein, Defendants CUMMINS and CUMMINS DIESEL, CAPACITY OF TEXAS, and CARGOTEC SOLUTIONS were the manufacturers and/or suppliers of UTRs to the PORTS and that Defendant CUMMINS DIESEL was at all times herein the authorized agent of Defendant CUMMINS in California.

32.     Plaintiffs are informed and believe and thereon allege that Defendants HARBOR MARINE, PACIFIC CRANE and the DOE Defendants, and each of them, were responsible for the maintenance, upkeep and repair of the UTRs at the PORTS.

6

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

33.     Plaintiffs are informed and believe and thereon allege that Defendants DONALDSON COMPANY, DYNAFLEX PRODUCTS and ECS TUNING and each of them, were responsible for the manufacture and fabrication of Diesel Engine Particulate Filters (hereafter sometimes referred to as "DPFs") used on the UTRs at the PORTS.

## BRIEF SUMMARY OF FACTS

### Emission of Toxic Substances by DFPs

34.     In approximately mid-2009, Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS, LLC; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC. (hereafter sometimes referred to collectively as "Defendants") and the DOE Defendants, and each of them, designed, manufactured, sold and distributed new and after-market Diesel Engine Particular Filters.

35.     These DPFs were incorporated into new UTRs and/or retrofitted into the exhaust systems of existing UTRs at the PORTS.  The DPFs were designed to "burn off" or otherwise reduce diesel fuel emissions from the UTR including, but not limited to, particulate matter and noxious gases.  These emissions, even after the "burn off" still include, but are not limited to, carbon monoxide, ultra-fine particulate matter, nitrogen dioxide, sulfur dioxide, sulfur hexafloride, aldehydes, other gases and other materials (hereinafter referred to as "TOXIC EMISSIONS").

36.     When a DPF's sensors detect a pre-set level of contamination, they are designed to commence a process known as "burning" or "regeneration" which heats the filtered materials to extremely high temperatures thereby rendering the contaminants harmless or otherwise greatly reducing their toxicity.  Some of the

7

1  TOXIC EMISSIONS are then discharged from the filter into the atmosphere.  However,
2  as more particularly set forth herein, substantial amounts of TOXIC EMISSIONS
3  entered the cabs of the UTRs and exposed the drivers, namely Plaintiffs LONGSHORE
4  WORKERS, to risk of injury and harm.

5      37.    Plaintiffs are informed and believe and thereon allege that, at all times
6  herein mentioned, Defendants and the DOE Defendants, and each of them, *inter alia*,
7  designed, tested, manufactured, assembled, packaged, labeled, distributed, installed,
8  inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised,
9  promoted, delivered, sold, retrofitted, repaired or maintained the UTRs and the DPFs
10  which are used, *inter alia*, in the maritime shipping industry including at the PORTS.

11      38.    Plaintiffs are further informed and believe and thereon allege that, at all
12  times herein mentioned, Defendants , CUMMINS, CUMMINS DIESEL, CAPACITY OF
13  TEXAS, CARGOTEC SOLUTIONS, COLLINS BUS CORP., DONALDSON
14  COMPANY, DYNAFLEX PRODUCTS, ECS TUNING, and the DOE Defendants, and
15  each of them, sold DPFs and DPF-equipped UTRs to the STEVEDORE COMPANIES.

16      39.    Plaintiffs are further informed and believe and thereon allege that, at all
17  times herein mentioned, Defendants CUMMINS, CUMMINS DIESEL, CAPACITY OF
18  TEXAS, CARGOTEC SOLUTIONS, COLLINS BUS CORP., HARBOR MARINE,
19  PACIFIC CRANE, and the DOE Defendants, and each of them, installed or maintained
20  the DPF-equipped UTRs used by Plaintiffs LONGSHORE WORKERS at the PORTS.

21      40.    Plaintiffs are informed and believe and thereon allege that since mid-
22  2009, DPFs attached or retro-fitted by Defendants CUMMINS, CUMMINS DIESEL,
23  CAPACITY OF TEXAS, CARGOTEC SOLUTIONS, COLLINS BUS CORP., HARBOR
24  MARINE, PACIFIC CRANE, and the DOE Defendants, and each of them, to the cabs of
25  the UTRs operated by Plaintiffs LONGSHORE WORKERS were designed for large
26  semi-tractor trailers and other diesel-powered vehicles which are typically driven at
27  speeds in excess of 55 miles per hour.
28

8

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

41.   The UTRs used at the PORTS by Plaintiffs LONGSHORE WORKERS are designed to operate at speeds not to exceed 35 miles per hour and are typically operated at average speeds of five to 25 miles per hour.

42.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, because UTRs are operated at speeds lower than 55 miles per hour, the "burned/regenerated" fumes and material including TOXIC EMISSIONS were not fully dispersed and significant amounts of non-burned/non-regenerated fumes leaked or otherwise infiltrated into the cabs of the UTRs operated by Plaintiffs LONGSHORE WORKERS and were a legal cause of Plaintiffs LONGSHORE WORKERS' injuries as set forth, *infra*.

43.   Defendants and the DOE Defendants, and each of them, equipped the UTRs with devices known as "regeneration lights" or "regen lights". These lights were designed to alert drivers to the fact that the regeneration process was taking place. However, the devices failed to properly activate. As a result, drivers of the DPF-equipped UTRs were unaware that they were being exposed to significant amounts of non-burned/non-regenerated fumes including carbon monoxide and other harmful levels of noxious substances.

44.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants and the DOE Defendants, and each of them, knew or should have known that the DPFs only activate when a vehicle reaches a predetermined temperature (typically attained when a vehicle reaches 55 miles per hour or greater) but nonetheless, *inter alia*, Defendants and the DOE Defendants and each of them, packaged, labeled, distributed, installed, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained the DPFs for use on UTRs which operate generally at substantially slower speeds.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

45.     The conduct of Defendants and the DOE Defendants, and each of them, as described herein was done with a conscious disregard of the rights of Plaintiffs LONGSHORE WORKERS and Plaintiffs LONGSHORE WORKERS' SPOUSES and with the intent to vex, injure or annoy said Plaintiffs, such as to constitute oppression, fraud or malice as defined by California *Civil Code* section 3294, entitling said Plaintiffs to punitive damages in an amount appropriate to punish or set an example of said Defendants, and the DOE Defendants, and each of them.

46.     As a legal result of the aforesaid acts, omissions and conduct of Defendants and the DOE Defendants, and each them, Plaintiffs LONGSHORE WORKERS sustained general damages within the jurisdiction of the Superior Court.

## Plaintiffs LONGSHORE WORKERS'
## Exposure to Toxic Emissions
## and
## Injuries Sustained Thereby

47.     At all times herein mentioned, Plaintiffs LONGSHORE WORKERS held "Class A" Longshoremen classifications which authorized them to operate UTRs on a full-time basis.

48.     Plaintiffs LONGSHORE WORKERS are informed and believe and thereon allege that commencing in approximately mid-2009, to the present, each of them was exposed to harmful levels of, *inter alia*, TOXIC EMISSIONS which leaked into the cabs of their respective UTRs equipped with Defendants' DPFs and that said TOXIC EMISSIONS were the legal cause of their injuries and damages as hereinafter set forth.  Driving the DPF-equipped UTRs caused each of the Plaintiffs LONGSHORE WORKERS to sustain, *inter alia*, reduced lung function/respiratory illness and cognitive impairment, *et cetera*, as described below.  Each additional and subsequent

10

1  exposure further exacerbated their respective existing injuries from their earlier
2  respective exposures.
3      49.    As set forth, *infra*, due to defects in the DPFs, TOXIC EMISSIONS leaked
4  or otherwise infiltrated into the UTRs' cabs while the UTRs were being operated by
5  Plaintiffs LONGSHORE WORKERS. As a legal result of their respective combined
6  acute/peak and long-term chronic exposure to the above-described TOXIC
7  EMISSIONS, each of the Plaintiffs LONGSHORE WORKERS was exposed to harmful
8  levels of TOXIC EMISSIONS.
9      50.    The known effects of acute and long-term chronic exposure to harmful
10 levels of carbon monoxide include but are not limited to, *inter alia*, injury to the brain
11 including cognitive impairment and memory loss.
12     51.    The known effects of acute and long-term chronic exposure to harmful
13 levels of nitrogen dioxide, sulphur dioxide and aldehyde include but are not limited to,
14 *inter alia*, injury to lung tissue leading to susceptibility to respiratory disease, asthma
15 and emphysema.
16     52.    The known effects of acute and chronic exposure to harmful levels of
17 polycyclic aromatic hydrocarbons include but are not limited to, *inter alia*, injury to red
18 blood cells which causes anemia and can also compromise the immune system.
19     53.    Diesel Particulate Matter is invisible to the naked eye and
20 consists of easily inhaled particles which become imbedded in the lungs and have a
21 demonstrably adverse effect on respiratory and pulmonary function. The ultra-fine
22 particles also penetrate the blood-brain barrier and are known to cause cognitive
23 impairment and memory loss.
24     54.    As more particularly set forth below, as a legal result of their exposure to
25 TOXIC EMISSIONS, each of the Plaintiffs LONGSHORE WORKERS suffered serious
26 permanent and irreversible damage, *e.g.*, compromise to their respiratory systems
27 and/or permanent and irreversible cognitive impairment.
28

11

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

**A.      Plaintiff Carlos Trevino ("Mr. Trevino")**

55.      On or about May 28, 2009, Mr. Trevino, during the course and scope of his employment with CALIFORNIA UNITED TERMINALS, was driving a DPF-equipped UTR at the PORT OF LONG BEACH and was hauling a container from a cargo ship for delivery to the main yard when he became aware of a strong and unusual odor emanating from the UTR.  Upon exiting the rear door of his UTR, he was engulfed in smoke which caused him to sustain, *inter alia,* difficulty breathing and other maladies caused by carbon monoxide and other elements of diesel exhaust fumes and which required treatment by paramedics.

56.      Subsequent to Mr. Trevino's initial exposure, he was subjected to ongoing and continuous exposure to TOXIC EMISSIONS associated with driving DPF-equipped UTRs.

**B.      Plaintiff Alex Marinkovich ("Mr. Marinkovich")**

57.      In mid-2009, Mr. Marinkovich, during the course and scope of his employment with EAGLE MARINE in the PORT OF LOS ANGELES, drove the above-described DPF-equipped UTRs.

58.      On October 14, 2009, Mr. Marinkovich was driving a DPF-equipped UTR at Terminal 302 in the PORT OF LOS ANGELES, when the above-described TOXIC EMISSIONS entered his cab which compromised his breathing and vision and caused dizziness necessitating care by paramedics who transported him to San Pedro Hospital.

59.      Subsequent to Mr. Marinkovich's initial exposure to carbon monoxide and other noxious gases associated with the above-described TOXIC EMISSIONS he was subjected to ongoing and continuous exposure to TOXIC EMISSIONS while driving DPF-equipped UTRs and was transported by ambulance to a local Emergency Room on multiple occasions thereafter, *i.e.,* on October 29, 2009, November 5, 2009, November 24, 2009, April 7, 2010, and September 3, 2010, each time for breathing

12

1  difficulties due to said exposure.  He was ultimately unable to work because of, *inter*

2  *alia*, ongoing respiratory problems, nausea, coughing, fatigue, memory loss, cognitive

3  impairment, *et cetera*, all of which are consistent with exposure to carbon monoxide.

4  **C.   Plaintiff Jennifer Sharp ("Ms. Sharp")**

5        60.   Commencing in mid-2009, Ms. Sharp, during the course and scope of her

6  employment with EAGLE MARINE, drove the above-described DPF-equipped UTRs

7  in the PORT OF LOS ANGELES.

8        61.   On November 14, 2009, Ms. Sharp was driving a DPF-equipped UTR at

9  Terminal 302 during the course and scope of her employment when she was overcome

10  by TOXIC EMISSIONS which infiltrated the cab of her UTR causing her to become

11  disoriented and confused, all of which required medical care and monitoring.

12        62.   Subsequent to Ms. Sharp's initial exposure to TOXIC EMISSIONS, she

13  was subjected to ongoing and continuous exposure to TOXIC EMISSIONS while

14  driving the DPF-equipped UTRs.

15  **D.   Plaintiff Joel Graves ("Mr. Graves")**

16        63.   On December 19, 2009, Mr. Graves, during the course and scope of his

17  employment with EAGLE MARINE, was driving a DPF-equipped UTR at the PORT

18  OF LOS ANGELES when the "regeneration light" inside the UTR dashboard failed to

19  activate and the cab filled with TOXIC EMISSIONS associated with the above-

20  described fumes which caused him to sustain, *inter alia,* difficulty breathing and other

21  maladies caused by such exposure.  Subsequent to his initial exposure to the above-

22  described fumes from UTR Diesel, *supra*, he was subjected to ongoing and continuous

23  exposure to TOXIC EMISSIONS while driving DPF-equipped UTRs.

24  **E.   Plaintiff Nicholas Vitalich ("Mr. Vitalich")**

25        64.   In or about November 2009, Mr. Vitalich, during the course and scope

26  of his employment with EAGLE MARINE at the PORT OF LOS ANGELES and at

27  STEVEDORING SERVICES and HANJIN at the PORT OF LONG BEACH, operated a

28

13

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1   DPF-equipped UTR and experienced difficulty breathing and other maladies caused by

2   TOXIC EMISSIONS.

3        65.    Subsequent to his initial exposure to the TOXIC EMISSIONS, he was

4   subjected to ongoing and continuous exposure to TOXIC EMISSIONS from driving

5   DPF-equipped UTRs.

6   **F.**     **Plaintiff Ralph Esposito ("Mr. Esposito")**

7        66.    Ralph Esposito received his Class A classification in 2000, and since then

8   he has driven UTRs in the PORTS. On March 13, 2010, Mr. Esposito, during the course

9   and scope of his employment with EAGLE MARINE, was driving a DPF-equipped

10   UTR in the PORT OF LOS ANGELES when the cab filled with TOXIC EMISSIONS

11   which caused him to sustain, *inter alia*, difficulty breathing and other maladies caused

12   by such exposure necessitating treatment by paramedics and treatment at a local

13   Emergency Room.

14        67.    Subsequent to his initial exposure to the above-described TOXIC

15   EMISSIONS, he was subjected to ongoing and continuous exposure to TOXIC

16   EMISSIONS while driving DPF-equipped UTRs.

17   **G.**     **Plaintiff Gilbert Olguin ("Mr. Olguin")**

18        68.    Mr. Olguin started as a full time longshoreman for the PORTS in 1998. In

19   or about July, 2009, Mr. Olguin, during the course and scope of his employment with

20   YUSEN TERMINALS, located on Terminal Island in the PORT OF LOS ANGELES, was

21   driving a DPF-equipped UTR at Terminal 214, when the cab filled with TOXIC

22   EMISSIONS.

23        69.    Thereafter, commencing in or about October 2009, while employed by

24   EAGLE MARINE, Mr. Olguin was exposed on multiple occasions while driving the

25   DPF-equipped UTRs, when the cab was repeatedly filled with TOXIC EMISSIONS.

26   This ongoing and continuous exposure to carbon monoxide and other noxious gases

27   associated with the above-described fumes from driving DPF-equipped UTRs caused

28

14

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

1   him to sustain, *inter alia*, difficulty breathing and other maladies caused by such

2   exposure.

3   **H.     Plaintiff Steve Roldan ("Mr. Roldan")**

4       70.     Commencing in September 2009, Mr. Roldan, during the course and

5   scope of his employment with MAERSK at the PORT OF LOS ANGELES,

6   STEVEDORING SERVICES at Terminals 94, 245 and 266, and HANJIN's Terminal 140

7   at the PORT OF LONG BEACH was driving the DPF-equipped UTRs running on UTR

8   Diesel when he was exposed to TOXIC EMISSIONS that caused him to sustain, *inter*

9   *alia*, difficulty breathing and other maladies caused by such exposure.

10       71.     Subsequent to his initial exposure to the above-described fumes from

11   UTR Diesel, he was subjected to ongoing and continuous exposure to TOXIC

12   EMISSIONS while driving DPF-equipped UTRs.

13   **I.     Plaintiff Lourdes Rada ("Ms. Rada")**

14       72.     Commencing in 1997, Ms. Rada, during the course and scope of her

15   employment with different terminals at the PORT OF LOS ANGELES, drove UTRs. On

16   March 25, 2011, Ms. Rada was driving an above-described DPF-equipped UTR at

17   Terminal 302 in the PORT OF LOS ANGELES during the course and scope of her

18   employment with EAGLE MARINE when she was overcome by TOXIC EMISSIONS

19   inside the cab causing her to become disoriented and confused, all of which all of

20   which required medical care and monitoring.

21       73.     Subsequent to Ms. Rada's initial exposure to TOXIC EMISSIONS, she was

22   subjected to ongoing and continuous exposure to TOXIC EMISSIONS while driving

23   DPF-equipped UTRs.

24   **J.     Plaintiff Marilyn Williams ("Ms. Williams")**

25       74.     Commencing in 1984, Ms. Williams, during the course and scope of her

26   employment with various terminals in the PORT OF LONG BEACH and PORT OF

27   LOS ANGELES, was a full-time UTR driver.

28

15

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

75.  In October, 2009, Ms. Williams was driving an above-described DPF-equipped UTR at Terminal 302 during the course and scope of her employment with EAGLE MARINE, when she was overcome by TOXIC EMISSIONS inside the cab causing her to become disoriented and confused, all of which all of which required medical care and monitoring.  Subsequent to Ms. Williams' initial exposure to TOXIC EMISSIONS, she was subjected to ongoing and continuous exposure to TOXIC EMISSIONS while driving DPF-equipped UTRs.

### Plaintiffs LONGSHORE WORKERS' Damages

76.  As a legal result of the conduct of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS, and each of them, were hurt and injured in health, strength and activities, sustaining injury to their respective bodies and shock and injury to their respective nervous systems and persons, including pulmonary impairment and cognitive impairment, all of which are consistent with exposure to TOXIC EMISSIONS as defined herein and all of which were exacerbated by subsequent exposures and all of which have caused and continue to cause each of them great mental, physical and nervous pain and suffering.  Each of the Plaintiff LONGSHORE WORKERS is informed and believes and therefore alleges that said injuries will result in some permanent disability.

77.  Solely and legally as a result of the conduct of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS, and each of them, incurred indebtedness for physicians, hospitalization, x-rays, drugs and sundries in the treatment of their respective injuries, in an amount which each of them is unable at this time to ascertain, and will become obligated in the further treatment of the injuries for an indefinite period of time in the future.  Plaintiffs will ask leave of Court to amend this Complaint to show the same when ascertained.

16

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

78.    As a legal result of the conduct of Defendants and the DOE Defendants, and each them, Plaintiffs LONGSHORE WORKERS, and each of them, has suffered loss of income and will continue to suffer loss of income in the future, in an amount which is not known at this time.  Plaintiffs will ask leave of Court to amend this Complaint to show the same when ascertained.

**FIRST CAUSE OF ACTION**

**(PRODUCTS LIABILITY – NEGLIGENCE)**

**ALL PLAINTIFFS LONGSHORE WORKERS**

v.

**DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS, LLC; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC.**
and
**DOES 2 through 100, inclusive**

79.    Plaintiffs LONGSHORE WORKERS hereby incorporate each of the preceding paragraphs as though set forth in full.

80.    At all times herein mentioned, Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS; HARBOR MARINE; DONALDSON COMPANY; DYNAFLEX PRODUCTS; ECS TUNING; PACIFIC CRANE MAINTENANCE SERVICES, INC. and the DOE Defendants, and each of them, *inter alia*, designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained the DPF-equipped UTRs such that they were dangerous and unsafe for their respective intended uses.

17

81.    At all times herein mentioned, Defendants and the DOE Defendants, and each of them, had a duty, *inter alia*, to design, test, manufacture, assemble, package, label, distribute, install, inspect, construct, fabricate, analyze, recommend, merchandise, advertise, promote, deliver, sell, retrofit, repair, maintain, *et cetera*, the UTRs and the DPFs like the ones used and operated by Plaintiffs LONGSHORE WORKERS and a duty to warn Plaintiffs LONGSHORE WORKERS about, *inter alia*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs which exposed drivers, such as Plaintiffs herein, to unreasonably high risks of injury or harm from exposure to toxic fumes and contaminants entering the cab of an UTR as set forth herein, *et cetera*.

82.    At all times herein mentioned, Defendants and the DOE Defendants, and each of them, knew or in the exercise of reasonable care should have known, *inter alia*, that DPF-equipped UTRs, if not properly designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold, retrofitted, repaired or maintained, and if Defendants failed to warn of the above-described hazards of operating DPF-equipped UTRs running on diesel fuel, these UTRs would be unsafe for the uses and purposes for which they were intended in that, *inter alia*, they were likely to expose Plaintiffs LONGSHORE WORKERS to unsafe levels of TOXIC EMISSIONS.

83.    Defendants and the DOE Defendants, and each of them, so negligently and carelessly designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered, sold and retrofitted the DPF-equipped UTR and negligently, warned or failed to warn about, *inter alia*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs which exposed drivers, such as Plaintiffs herein, to an unreasonably high risk of injury or harm from

18

1  exposure to toxic fumes and contaminants entering the cab of DPF-equipped UTRs as

2  set forth herein, *et cetera,* such that they were defective and dangerous products and

3  unsafe for the uses and purposes for which they were intended when used as

4  recommended by said Defendants and the DOE Defendants, and each of them.

5       84.    As a legal result of the above-described malfeasance and misfeasance of

6  Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE

7  WORKERS were exposed to unsafe levels of TOXIC EMISSIONS.

8       85.    As a legal result of the above-described malfeasance and misfeasance of

9  Defendants and the DOE Defendants,  and each of them,  Plaintiffs LONGSHORE

10  WORKERS sustained the injuries and damages as alleged, *supra.*

11      86.    The conduct of Defendants and the DOE Defendants, and each of them,

12  as described herein entitles Plaintiffs to punitive damages on the basis as set forth *infra.*

13      87.    As a legal result of the foregoing, Plaintiffs LONGSHORE WORKERS

14  suffered general damages in an amount within the jurisdiction of the Superior Court.

15

16                      **SECOND CAUSE OF ACTION**

17                 **(PRODUCTS LIABILITY – STRICT LIABILITY)**

18                                  **by**

19              **ALL PLAINTIFFS LONGSHORE WORKERS**
                                    **v.**
20   **DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION;**
21        **CAPACITY OF TEXAS, INC.; COLLINS BUS CORP.,**
             **individually and as Successor in Interest to subsidiary**
22        **CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS, LLC;**
23   **DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING;**
     **HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC.**
24                                 **and**
25                  **DOES 2 through 100, inclusive**

26      88.    Plaintiffs LONGSHORE WORKERS hereby incorporate each of the

27  preceding paragraphs as though set forth in full.

28

                                     19

              PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

89.     Defendants CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS, LLC; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC. and the DOE Defendants, and each of them, *inter alia*, designed, tested, manufactured, assembled, packaged, labeled, distributed, installed, inspected, constructed, fabricated, analyzed, recommended, merchandised, advertised, promoted, delivered and sold the UTRs and DPFs to be used for the above-described purposes.

90.     The UTRs and DPFs were unsafe for their intended and expected use by reason of defects, *inter alia*, in their design, testing, manufacture, assembly, packaging, labeling, distribution, installation, inspection, construction, fabrication, analysis, recommendation, merchandising, advertising, promotion, delivery, sale and handling,. This includes that when put to their respective intended uses, they exposed Plaintiffs LONGSHORE WORKERS operating DPF-equipped UTRs to unsafe levels of TOXIC EMISSIONS.

91.     At all times herein mentioned, Plaintiffs LONGSHORE WORKERS were operating their respective DPF-equipped UTRs in a manner for which they were foreseeably intended to be used, and as a legal result of the defects previously described (as well as other defects presently unknown to Plaintiffs LONGSHORE WORKERS), and as a legal result of failures to warn by Defendants and the DOE Defendants, and each of them, of such defects (*e.g.*, the latent or otherwise imperceptible hazards inherent in the use of such DPF-equipped UTRs which exposed drivers, such as Plaintiff herein, to an unreasonably high risk of injury or harm from exposure to toxic fumes and contaminants entering the cab of an UTR as set forth herein), Plaintiffs were exposed to TOXIC EMISSIONS.

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

92.     As a further legal result of the above-described malfeasance and misfeasance of Defendants and the DOE Defendants, and each of them, Plaintiffs LONGSHORE WORKERS sustained the injuries and damages as alleged, *supra.*

93.     The conduct of Defendants and the DOE Defendants, and each of them, as described herein, entitles Plaintiffs to punitive damages on the basis set forth *supra.*

94.     As a further legal result of the foregoing, Plaintiffs LONGSHORE WORKERS sustained general damages in an amount within the jurisdiction of the Superior Court.

**THIRD CAUSE OF ACTION**

**(LOSS OF CONSORTIUM)**

**ALL PLAINTIFFS LONGSHORE WORKERS' SPOUSES**

**v.**

**DEFENDANTS CUMMINS, INC.; CUMMINS DIESEL SALES CORPORATION; CAPACITY OF TEXAS, INC.; COLLINS BUS CORP., individually and as Successor in Interest to subsidiary CAPACITY OF TEXAS, INC.; CARGOTEC SOLUTIONS, LLC; DONALDSON COMPANY, INC.; DYNAFLEX PRODUCTS; ECS TUNING; HARBOR MARINE; PACIFIC CRANE MAINTENANCE SERVICES, INC.**

**and**

**DOES 2 through 100, inclusive**

95.     Plaintiffs LONGSHORE WORKERS' SPOUSES hereby incorporate each of the preceding paragraphs as though set forth in full.

96.     At all times herein mentioned, Plaintiffs DONNA TREVINO, STEVEN SHARP, ROSEMARY GRAVES, SHARON VITALICH, SANDRA OLGUIN, ANN ESPOSITO, and CHRISTY ROLDAN (hereafter, collectively, Plaintiffs LONGSHORE WORKERS' SPOUSES) were married to their respective spouses, Plaintiffs LONGSHORE WORKERS.

97.     Prior to the events as set forth herein, *supra,* the above-referenced legally married Plaintiffs LONGSHORE WORKERS were able to and did perform their respective duties as husbands and wives.  Subsequent to their respective severe

21

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1  disabling injuries sustained by each of the legally married Plaintiffs LONGSHORE

2  WORKERS, and as a direct and legal result thereof, Plaintiffs LONGSHORE

3  WORKERS have been unable to perform their duties as husbands and wives to their

4  respective Plaintiffs LONGSHORE WORKERS' SPOUSES.

5        98.    As a direct and legal result thereof, Plaintiffs LONGSHORE WORKERS'

6  SPOUSES have each been deprived of and will in the future be deprived of their

7  respective husband's/wife's love, companionship, comfort, affection, society, solace,

8  moral support and deprived of the physical assistance in the operation and

9  maintenance of their home and the enjoyment of sexual relations.

10        99.    By reason of the foregoing, Plaintiffs LONGSHORE WORKERS'

11  SPOUSES have been deprived the duties of their respective Plaintiffs LONGSHORE

12  WORKERS husbands and wives, all to their further damage in a sum according to

13  proof at trial.

14       100.   Plaintiffs LONGSHORE WORKERS' SPOUSES are informed and believe

15  and thereon allege that the injuries sustained by their respective Plaintiffs

16  LONGSHORE WORKERS husbands and wives will result in some permanent

17  deprivation of the work and services of Plaintiffs LONGSHORE WORKERS, all to the

18  further damage of Plaintiffs LONGSHORE WORKERS' SPOUSES.

19       101.   The conduct of Defendants and the DOE Defendants, and each of them,

20  as described herein, entitles Plaintiffs LONGSHORE WORKERS' SPOUSES to punitive

21  damages on the basis as set forth *supra*.

22       102.   As a legal result of the foregoing, Plaintiffs LONGSHORE WORKERS'

23  SPOUSES sustained general damages in an amount within the jurisdiction of the

24  Superior Court.

25

26       WHEREFORE, Plaintiffs pray for judgment against the defendants, and each of

27  them, as follows:

28

22

1      1.     For general damages according to proof, with pre-judgment interest

2   thereon at the legal rate as permitted by law;

3      2.     For compensatory damages;

4      3.     For punitive damages;

5      4.     For medical related expenses according to proof;

6      5.     For loss of income according to proof;

7      6.     For costs of suit herein incurred; and

8      7.     For such other and further relief as the Court may deem appropriate.

9

10   DATED:  July 19, 2011                       SWANSON & McKIBBIN

11

12

13                                     By:  _____

14                                          JULIA SWANSON
                                            Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

23

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED:  July 19, 2011

SWANSON & McKIBBIN

By: _____

JULIA SWANSON
Attorneys for Plaintiffs

24

PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:

E-MAIL ADDRESS (Optional):          FAX NO. (Optional):

ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

   h.   Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

   i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
           (INSERT DATE)                                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR PLAINTIFF)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR DEFENDANT)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____)
Date:

_____                    ➤  _____
          (TYPE OR PRINT NAME)                                  (ATTORNEY FOR _____)

LACIV 229 (new)
LASC Approved 04/11          **STIPULATION – EARLY ORGANIZATIONAL MEETING**                    Page 2 of 2

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific' later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date:   _____          _____
                                                          JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1.  This document relates to:
    - ☐   Request for Informal Discovery Conference
    - ☐   Answer to Request for Informal Discovery Conference
2.  Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3.  Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4.  **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____                BC 462923

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3d).  There is additional information on the reverse side of this form

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Han. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. John P. Shook | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Pending Assignment | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S.Commonwealth Ave., Los Angeles 90005).
This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the
outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the
Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____      JOHN A. CLARKE, Executive Officer/Clerk
                                                                                      By _____, Deputy Clerk
LACIV CCH 190 (Rev. 04/10)                  NOTICE OF CASE ASSIGNMENT –                Page 1 of 2
LASC Approved 05-06                         UNLIMITED CIVIL CASE

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7050 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8585 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3180 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3902 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5885 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 105 | Pomona, CA 91766 | (909)620-3183 | (909)629-5283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

COMPLAINTS: All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

CROSS-COMPLAINTS: Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

# LOS ANGELES SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a relationship they want to preserve, for example, a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding arbitration* means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**
- Civil Action Mediation (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- Retired Judge Settlement Conference
- Neutral Evaluation (Governed by Los Angeles Superior Court Rules, chapter 12.)
- Judicial Arbitration (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- Eminent Domain Mediation (Governed by Code of Civil Procedure section 1250.420.)
- Civil Harassment Mediation
- Small Claims Mediation

**FAMILY LAW (non-custody):**
- Mediation
- Forensic Certified Public Accountant (CPA) Settlement Conference
- Settlement Conference
- Nonbinding Arbitration (Governed by Family Code section 2554.)

**PROBATE:**
- Mediation
- Settlement Conference

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Pay Panel or may hire someone privately, at their discretion. If the parties utilize the Pro Bono Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

Party Pay Panel    The Party Pay Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

Pro Bono Panel    The Pro Bono Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Pay Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all pro bono volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

Private Neutral    The market rate for private neutrals can range from $300-$1,000 per hour.

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| | | | | | |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7050 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0357 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)568-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-6115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

For additional information, visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

Partially Funded by the Los Angeles County Dispute Resolution Program

LAADR 005 (Rev. 07/08) (Pending Approval)
LASC Approval 10-03

**Superior Court of California, County of Los Angeles**
JOHN A. CLARKE, EXECUTIVE OFFICER/CLERK                    ALTERNATIVE DISPUTE RESOLUTION (ADR)

## ADR CASE REFERRAL INTAKE

(Please type or print clearly)

| Case Number: | Courthouse: | Dept.: |
|---|---|---|
| Case Name: | | |

Litigation Type:  ☒ Civil   ☐ Family Law   ☐ Probate   ☐ Other (specify): _____

ADR Process:  ☐ MEDIATION   ☐ ARBITRATION   ☐ NEUTRAL EVALUATION   ☐ SETTLEMENT CONFERENCE

Case Type: See Page 2                           ADR Completion Date: _____

**Amount in Dispute:**

| Plaintiff/Petitioner or attorney: | ☐ $0-$25,000 | ☐ $50,000-$100,000 | ☐ $250,000-$500,000 | ☐ $750,000-$1,000,000 |
|---|---|---|---|---|
| | ☐ $25,000-$50,000 | ☐ $100,000-$250,000 | ☐ $500,000-$750,000 | ☐ Over $1,000,000 |
| Defendant/Respondent or attorney: | ☐ $0-$25,000 | ☐ $50,000-$100,000 | ☐ $250,000-$500,000 | ☐ $750,000-$1,000,000 |
| | ☐ $25,000-$50,000 | ☐ $100,000-$250,000 | ☐ $500,000-$750,000 | ☐ Over $1,000,000 |

**Party Pay Panel:**
☐ The parties select the following Neutrals in order of preference from the Court ADR Party Pay Panel and acknowledge they are undertaking a financial commitment in selecting a Party Pay Panel Neutral:

1) NAME: _____          NEUTRAL NO.: _____

2) NAME: _____          NEUTRAL NO.: _____

(signature of plaintiff/petitioner or attorney)          (signature of defendant/respondent or attorney)
☐ ADDITIONAL SIGNATURES LISTED ON ATTACHED PAGE

**Pro Bono Panel:**
☐ The parties understand that a Neutral from the Court ADR Pro Bono Panel will be assigned on a random basis (civil mediation and arbitration only).

NAME OF ASSIGNED NEUTRAL: _____          NEUTRAL NO.: _____

**PARTIES**

| ATTORNEY NAME: | ATTORNEY NAME: |
|---|---|
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:          STATE:   ZIP: | CITY:          STATE:   ZIP: |
| PHONE: (    )          FAX: (    ) | PHONE: (    )          FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)          (party type) | (party name)          (party type) |
| ATTORNEY NAME: | ATTORNEY NAME: |
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:          STATE:   ZIP: | CITY:          STATE:   ZIP: |
| PHONE: (    )          FAX: (    ) | PHONE: (    )          FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)          (party type) | (party name)          (party type) |

☐ ADDITIONAL PARTIES LISTED ON PAGE THREE

LAADR 039 (Rev. 07/04) (Pending Approval)
LASC Approval 10-04                                                          Page 1 of 3

**ADR CASE REFERRAL INTAKE**
(continued)

| Case Name: | Case Number: |
|---|---|

**CASE SELECTION CRITERIA**

| | CASE TYPE |
|---|---|
| ☐ | Antitrust/Trade Regulation |
| ☐ | Auto Tort - Personal Injury/Property Damage/Wrongful Death (PI/PD/WD) |
| ☐ | Auto Tort - Uninsured Motorist - PI/PD/WD |
| ☐ | Civil Harassment |
| ☐ | Construction Defect |
| ☐ | Contract - Breach of Rental/Lease Contract (not insurance, UD, or wrongful eviction) |
| ☐ | Contract - Collections |
| ☐ | Contract - Contract/Warranty Breach - Seller Plaintiff (not insurance, fraud, or negligence) |
| ☐ | Contract - Contractual Fraud |
| ☐ | Contract - Insurance Coverage/Subrogation |
| ☐ | Contract - Negligent Breach of Contract/Warranty (not insurance or fraud) |
| ☐ | Contract - Other Breach of Contract/Warranty (not insurance, fraud, or negligence) |
| ☐ | Contract - Tortious Interference |
| ☐ | Declaratory Relief Only |
| ☐ | Elder/Dependent Adult Abuse |
| ☐ | Employment - Labor Commissioner Appeals |
| ☐ | Employment - Other (not wrongful termination or labor commissioner appeal) |
| ☐ | Employment - Wrongful Termination |
| ☐ | Family |
| ☐ | Injunctive Relief Only (not domestic/harassment) |
| ☐ | Non-PI/PD/WD Tort - Business/Commercial Tort (not fraud or breach of contract) |
| ☐ | Non-PI/PD/WD Tort - Civil Rights (e.g., discrimination, false arrest) |
| ☐ | Non-PI/PD/WD Tort - Defamation (e.g., slander, libel) |
| ☐ | Non-PI/PD/WD Tort - Fraud (no contract) |
| ☐ | Non-PI/PD/WD Tort - Intellectual Property |
| ☐ | Non-PI/PD/WD Tort - Legal Malpractice |
| ☐ | Other PI/PD/WD Tort - Asbestos |
| ☐ | Other PI/PD/WD Tort - Intentional (e.g., assault, vandalism, etc.) |
| ☐ | Other PI/PD/WD Tort - Intentional Infliction of Emotional Distress |
| ☐ | Other PI/PD/WD Tort - Medical Malpractice |
| ☐ | Other PI/PD/WD Tort - Premises Liability |
| ☐ | Other PI/PD/WD Tort - Product Liability (not asbestos, toxic/environmental) |
| ☐ | Partnership & Corporate Governance |
| ☐ | Probate |
| ☐ | Real Property - Eminent Domain/Condemnation |
| ☐ | Real Property - Mortgage Foreclosure |
| ☐ | Real Property - Quiet Title |
| ☐ | Real Property - Wrongful Eviction |
| ☐ | Real Property - Other |
| ☐ | Securities |
| ☐ | Toxic Tort/Environmental |
| ☐ | Workplace Harassment |
| ☐ | Writ of Mandate |

Do you need a neutral who accepts cases on short notice?  ☐ Yes    ☐ No

Jurisdiction Type:    ☐ Unlimited    ☐ Limited

Language ability needed other than English: _____

ADA Accommodations
☐ Accessible parking                ☐ Accessible entrance
☐ Accessible elevators              ☐ Accessible restrooms
☐ Accessible public phones          ☐ Accessible listening devices
☐ Accessible tables/counters        ☐ Other (specify): _____

Location:  Zip Code: _____    City: _____

## ADR CASE REFERRAL INTAKE
### (continued)

*(This Form Must Be Completed in Detail)*

| Case Name: | Case Number: |
|---|---|

| | |
|---|---|
| ATTORNEY NAME: | ATTORNEY NAME: |
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:              STATE:     ZIP: | CITY:              STATE:     ZIP: |
| PHONE: (    )           FAX: (    ) | PHONE: (    )           FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)              (party type) | (party name)              (party type) |
| ATTORNEY NAME: | ATTORNEY NAME: |
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:              STATE:     ZIP: | CITY:              STATE:     ZIP: |
| PHONE: (    )           FAX: (    ) | PHONE: (    )           FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)              (party type) | (party name)              (party type) |
| ATTORNEY NAME: | ATTORNEY NAME: |
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:              STATE:     ZIP: | CITY:              STATE:     ZIP: |
| PHONE: (    )           FAX: (    ) | PHONE: (    )           FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)              (party type) | (party name)              (party type) |
| ATTORNEY NAME: | ATTORNEY NAME: |
| FIRM: | FIRM: |
| ADDRESS: | ADDRESS: |
| CITY:              STATE:     ZIP: | CITY:              STATE:     ZIP: |
| PHONE: (    )           FAX: (    ) | PHONE: (    )           FAX: (    ) |
| E-MAIL: | E-MAIL: |
| ATTORNEY FOR: | ATTORNEY FOR: |
| (party name)              (party type) | (party name)              (party type) |

To obtain additional case information, visit Case Summaries at www.lasuperiorcourt.org

LAADR 039 (Rev. 07/08) (Pending Approval)
LASC Approval 10-04

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

ATTORNEY FOR (Name):

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in an Alternative Dispute Resolution (ADR) process in the above-entitled action, as follows:

☐ Mediation

☐ Non-Binding Arbitration

☐ Binding Arbitration

☐ Early Neutral Evaluation

☐ Settlement Conference

☐ Other ADR Process (describe): _____

Dated: _____

| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Additional signature(s) on reverse

LAADR 001 10-04
LASC Approved
(Rev. 01-07)

## STIPULATION TO PARTICIPATE IN
ALTERNATIVE DISPUTE RESOLUTION (ADR)

Cal. Rules of Court, rule 3.221
Page 1 of 2

| Short Title | Case Number |
|---|---|
| | |

| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Stipulating Party<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

**STIPULATION TO PARTICIPATE IN<br>ALTERNATIVE DISPUTE RESOLUTION (ADR)**

Cal. Rules of Court, rule 3.221<br>Page 2 of 2